STATE of Maine
v.
Michael STROLLO.

Supreme Judicial Court of Maine.

March 11, 1977.

ported the incident to Augusta Police Detective Sergeant Kerryl Clement on July 30, and Clement subsequently notified Warden Mullaney of the Maine State Prison. The warden summarily revoked Strollo's furlough and directed two prison officials to accompany Clement in apprehending the defendant. Having located Strollo at his mother's home, the officers informed Strollo of their intention of returning him to prison, and the defendant agreed to go voluntarily. Detective Clement then removed a knife from Strollo's right rear pocket. Clement testified at the suppression hearing that he had seen the wooden handle and, believing it to be a weapon, he seized it for the protection of himself and the other officers.

Defendant was thereafter returned to prison. Upon release six months later, he was arrested and later indicted for the crime of assault and battery, high and aggravated. Defendant moved to dismiss the indictment on the ground of duplicity, and he also moved to suppress the knife. Both motions were denied. Defendant was tried by jury and was convicted of simple assault and battery.

Joseph M. Jabar, Dist. Atty., Robert J. Daviau, Asst. Dist. Atty., Augusta, for plaintiff.

Wathen & Wathen, by Jessie H. Briggs, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE*, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

On March 14, 1975, Michael Strollo, the defendant, was convicted by a Kennebec County jury of the crime of simple assault and battery in violation of 17 M.R.S.A. § 201. Sentenced to the Kennebec County Jail, defendant appeals and asserts five assignments of error. We deny the appeal.

The jury could justifiably have found the following facts: On July 29, 1974 the defendant, on furlough from Maine State Prison, committed an assault and battery on a 23-year-old female. The victim re-

I.

The first contention on appeal is that the presiding Justice erroneously denied the defendant's pre-trial motion to dismiss on the ground of duplicity. The indictment, captioned "for violation of 17 M.R.S.A. § 201 (Assault and Battery, High and Aggravated)" charged Strollo in the following language:

That Michael Frank Strollo feloniously did make an assault and battery of a high and aggravated nature, and her, the said [victim], then and there feloniously did strike, beat, bruise, wound and ill treat, *to wit*, did then and there *touch the said [victim] on the breast and legs* and did then and there *threaten to use a*

---

* WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.

*knife* on the said [victim]." (emphasis added).

Defendant moved to dismiss the indictment, urging that it charged not only assault and battery, 17 M.R.S.A. § 201, but also threatening oral communication, 17 M.R.S.A. § 3701. Inasmuch as the touching of the breast and legs can hardly be said to be a threatening oral communication violative of 17 M.R.S.A. § 3701, it would appear logically that defendant's only objection is to the language which charges the threat to use the knife. Although both defendant and the State comment in their briefs upon the propriety of all of the language of the indictment following "to wit," we will consider only that part of the indictment which alleges the threat since it is only there that a duplicitous charge could possibly be found.[1]

██ It is a well established rule of criminal pleading that the State may allege only one substantive offense in a single count of an indictment. *State v. Campbell*, Me., 314 A.2d 398 (1974); *State v. Shannon*, 136 Me. 127, 3 A.2d 899 (1939). Yet it is equally true that several *acts* may be charged in the same count when they "relate to the same transaction and together constitute but one offense." *State v. Smith*, Me., 277 A.2d 481, 484 (1971). In *Smith*, defendant argued that the indictment was duplicitous in that it charged not only burglary but assault as well. We said:

> The averment of the assault serves only to *characterize and verify* the felonious intent to rape . . . . . The crime charged was burglary and the defendant was tried for that crime only. The instructions were tailored upon that theory . . . . . *Id.* at 486 (emphasis added).

██ The instant indictment charged assault and battery, high and aggravated.

Although the statute does not enumerate those circumstances which would warrant a finding of aggravation, this Court has ofttimes cited indecent liberties with a female and use of a deadly weapon as examples of elements which can transform a simple assault into a high and aggravated one. *State v. Smith*, Me., 306 A.2d 5 (1973); *State v. Bey*, 161 Me. 23, 206 A.2d 413 (1965). Accordingly, the State's allegation concerning the knife (and the indecent familiarities as well) served only to "characterize and verify" the aggravated nature of the assault and battery. The crime charged was aggravated assault and battery, 17 M.R.S.A. § 201, and Strollo was tried for that crime only. The challenged averment merely served as a description of an element essential to the single offense as charged. Defendant's objection of duplicity is without merit.

## II.

Defendant next asserts that the court erred in denying his motion to suppress the knife which was taken from his person by Detective Clement on July 30, 1974. Arguing that no proper arrest was effectuated on that day, defendant contends that the seizure was unlawful since the officers were not properly on his mother's premises. The presiding Justice held that they were in fact lawfully at the residence for the purpose of apprehending Strollo, and that they possessed legal authority to seize the knife either under the plain view or the limited protective search doctrine.

Initially, we note our concurrence with defendant's contention that no arrest took place on July 30. It is an indisputable fact that the arrest for the assault and battery did not occur until six months later, on January 15, 1975. That which transpired in July was not an arrest, but was simply a furlough revocation. Warden Mullaney testified that the decision to revoke a pris-

---

1. We note that under 17 M.R.S.A. § 1951, the taking of indecent liberties can be a crime if the victim is a minor. The present indictment clearly does not duplicitously charge a violation of § 1951, however, since the victim was 23 years old at the time of the incident.

oner's furlough is a unilateral one which rests exclusively within his power. Defendant apparently concedes that the usual procedure for revocation was followed in his case. He raises no issue as to his entitlement to a hearing, nor has he included in the record on appeal any prison regulations regarding furlough and its revocation.[2] In light of the record before us, we must assume that the revocation was valid in every respect. We accordingly agree with the justice below in his finding that the prison officials, as well as Detective Clement, were properly on the premises for the purpose of apprehending the defendant.

■ A question still remains, however, as to whether Detective Clement, although legally on the premises, possessed the authority to seize the knife. It must be remembered that a person on furlough at all times retains his status as a prisoner in *custodia legis*. Although he is permitted, for a short time, to be outside of the walls of the institution to which he has been committed, he remains "under an antecedently imposed and operative requirement, conditioned only upon the expiration of a period of time, to resume subjection to the physically detentive control of the institution." *State v. Holbrook*, Me., 318 A.2d 62, 67 (1974). It logically follows that if a person on furlough is still a prisoner who is subject to prison rules and regulations, *a fortiori*, a person whose furlough has been

validly revoked is virtually identical, in terms of status, to a prisoner who is physically within the confines of the prison.

■ Defendant argues that if indeed his furlough revocation and subsequent apprehension are valid and he is to be treated exactly as if he were within the confines of the State Prison, then the seizure must be held unlawful since the warden testified that all Maine State prisoners were permitted to carry the type of hobby knife taken from defendant. Although it may be true that prisoners often carried such knives, we think it obvious that if the warden should, for any reason at all, decide to confiscate a knife from a prisoner, his authority to do so is without question. Similarly, there is unquestionable authority in the warden to seize a knife from a prisoner whose furlough has been validly revoked since, as noted *supra*, such a person is virtually identical in status to a prisoner actually physically confined within the walls of the institution. We conclude that the justice below properly denied defendant's motion to suppress the knife.

### III.

■ The defendant next argues that evidence of his prior conviction was improperly admitted. 16 M.R.S.A. § 56 permits the use of a prior criminal record to impeach the credibility of a defendant who testifies in his own behalf.[3] The prior rec-

---

2. The statute authorizing furlough releases, 34 M.R.S.A. § 527, reads in part:
   The Bureau of Corrections is authorized to establish regulations for and permit institutions under its control to grant an inmate or prisoner furlough from the institution in which he is confined.
   Although such regulations presumably exist, no reference to them was made at either the suppression hearing or at the trial, nor have ,they been made a part of the record on appeal.

3. 16 M.R.S.A. § 56 provides:
   No person is incompetent to testify in any court or legal proceeding in consequence of having been convicted of an offense, but

conviction of a felony, any larceny or any other crime involving moral turpitude may be shown to affect his credibility, provided that less than 15 years have ,transpired since said conviction and less than 10 years have transpired since termination of any incarceration period therefor.
Effective February 2, 1976, 16 M.R.S.A. § 56 is codified in Rule 609, Maine Rules of Evidence.

We note that, for the first time in his brief to ,this Court, defendant has launched an attack on the constitutionality of this statute. Because we find no exceptional circumstances, we decline review of the claim. Even though the belatedly-raised issue concerns an alleged

ord is to be used only to impeach credibility and is not proof to the crime presently being tried. *State v. Gervais*, Me., 317 A. 2d 796 (1974); *State v. Knowles*, 98 Me. 429, 57 A. 588 (1904). We recently said that "(b)ecause of the potential prejudicial impact on a jury, the prior convictions of a criminal defendant are admissible for impeachment purposes in very limited, and narrowly defined, circumstances." *State v. Brooks*, Me., 366 A.2d 179 (1976).

■ Here, defendant did take the stand in his own behalf. Prior to his testifying, a chamber conference was held wherein the defense attorney requested that no question be asked as to a prior conviction for armed assault and battery. Counsel argued that to admit evidence of the prior conviction would be extremely prejudicial in view of the similarity in nature of the prior and present offenses.

Disagreeing with this argument, the Presiding Justice permitted the State to show the prior felony conviction for a crime involving moral turpitude. The Justice stated:

Were the Court faced with a situation where a prior conviction which could be used for impeachment were of such a nature and so unrelated to the offense of which the defendant is charged, that in such event it is possible that it might be —its prejudicial effect might outweigh the relevancy. Here we feel such is not the case and deny the defendant's motion.

Defendant concludes that the above-quoted language demonstrates that the court attached *probative* significance to the similarity of the offenses, and that it improperly admitted the conviction for other than impeachment purposes. The contention must fail. We are unable to ascertain how such a conclusion can possibly be drawn from the court's remarks. Furthermore,

we note that the judge carefully instructed the jury that the prior conviction was admitted solely to impeach credibility. We conclude that no error was committed.

## IV.

■ Defendant next asserts that the trial court erred in failing to grant his requested instruction in response to a question propounded by the jury. At some point during their deliberations, the jury returned and asked the court to elaborate on the law regarding simple as distinguished from aggravated assault and battery. In addition, the jury asked the following specific question:

Is the act of propositioning a woman to go to bed and the further act of only tightly bringing the victim close to the defendant constitute or be interrupted (sic) as being assault and battery if the victim unwillingly does not desire to do so?

The justice instructed the jury that the depicted situation could be an example of assault and battery. Then, as a guideline, he proceeded to give examples of what might constitute high and aggravated circumstances. Defendant argues that by enumerating these factors in response to the jury's specific question, the court implied and encouraged the jury to believe that there might in fact be aggravating circumstances in the hypothetical they had posed. Asserting that his rights were thereby prejudiced, defendant maintains that the jury should have been told, *as a matter of law*, that the hypothetical illustrates simple as opposed to aggravated assault and battery.

We find no error or prejudice to defendant from the judge's instructions. The jury question was not sufficient in detail to mandate a ruling of simple assault as a matter of law. Certainly if the act includ-

violation of the constitution, the question is not properly before us for appellate consideration. *Reville v. Reville*, Me., 289 A.2d 695

(1972); *Younie v. State*, Me., 281 A.2d 446 (1971).

ed the taking of any indecent liberties, a jury could properly find aggravation. *See State v. Smith,* 306 A.2d 5 (1973); *State v. Bey, supra.* In any event, Strollo clearly was not prejudiced by the court's refusal to give the requested instruction since, after all, the jury saw fit to convict him merely of the lesser crime of simple assault and battery.

## V.

As his last contention, defendant advances the argument that the jury verdict was contrary to the weight of the evidence. It is true that there was some conflict between the testimony of Strollo and the victim. But we have often said that it is within the unique province of the jury to determine the credence to be given witnesses and the weight to be given their testimony. *State v. Freitas,* Me., 349 A.2d 767 (1976); *State v. Call,* Me., 322 A.2d 64 (1974). Our review of the record satisfies us that there was not only sufficient but ample evidence from which the jury could rationally conclude beyond a reasonable doubt that Michael Strollo was guilty of simple assault and battery.

The entry must be,

Appeal denied.

All Justices concurring.