**Lyle Blaze BRYSON, Claimant–Appellant,**

v.

**STATE of Tennessee, Defendant–Appellee.**

Supreme Court of Tennessee, at Nashville.

July 16, 1990.

Franklin D. Brabson, Nashville, for claimant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, John Knox Walkup, Sol. Gen., and Michael W. Catalano, Deputy Atty. Gen., Nashville, for defendant-appellee.

## OPINION

COOPER, Justice.

This case presents the issue: Is the State of Tennessee liable for payment of medical expenses incurred by a convict who is injured in an automobile accident while on a three day furlough from a state institution? The Tennessee Claims Commission dismissed the claim for lack of jurisdiction. The Court of Appeals pretermitted the jurisdictional issue, but affirmed the action of the Claims Commission, the majority holding that the State did not have custody or control of the claimant while he was on furlough so as to make the State liable for payment of medical expenses incurred by the claimant.

The claimant, Lyle Blaze Bryson, was convicted on two counts of burglary in the second degree and was sentenced to serve eight years in the state penitentiary. At the time of his release on furlough, he was incarcerated at the Nashville Community Service Center. Mr. Bryson was given a three-day pre-release furlough, running from Sunday, June 28, 1987, at 10:30 a.m. until Wednesday, July 1, 1987, at 10:30 a.m. It was his second furlough to seek employment, generally a pre-condition to parole.

On July 1, 1987, at 5:35 a.m., Mr. Bryson was a passenger in a pick-up truck traveling eastbound on Stewarts Ferry Pike near Mt. Juliet. The truck was driven across the center line of the roadway and struck another vehicle head-on. Mr. Bryson suffered head and facial injuries. He was taken from the scene of the accident to Vanderbilt University Hospital. The State of Tennessee was informed of plaintiff's physical condition and his admission into the hospital and took no action to move Mr. Bryson to a hospital of its choice. Mr. Bryson remained in the hospital seven to eight days and incurred medical bills of $21,000.00.

While the claimant was undergoing treatment at Vanderbilt Hospital, he was paroled. The certificate of parole had been signed by the Chairman of the Board of Paroles and the Director of Paroles on June 30, 1987; however, it was not effective until July 8, 1987, when the claimant signed the certificate accepting the terms of the parole.

Subsequent to his discharge from the hospital and subsequent to his parole, claimant brought suit against the driver of the pick-up truck in which claimant was a passenger, seeking damages for pain and

suffering as the result of injuries he received in the accident, and also seeking to recover medical expenses incurred in the treatment of his injuries. Claimant received $20,000.00 in settlement of the suit.[1] Mr. Bryson then brought the present claim against the State of Tennessee, seeking to recover the $21,000.00 in medical expenses claimant incurred and also damages for future medical expenses.

Chapter 21 of Title 41 of the Tennessee Code Annotated, entitled "Inmates," deals principally with the duties and responsibilities of officials exercising actual custodial authority over "inmates." One such duty is to provide proper medical treatment to "any inmate who is ill." T.C.A. § 41–21–204(b). The term inmate is not specifically defined; however, it is clear that the term in context is to be given its general meaning, that is, a person confined in an institution such as a prison, poorhouse, or asylum. *See, generally, Levings v. Califano,* 604 F.2d 591, 593 (8th Cir. 1979); *Heumphreus v. State,* 334 N.W.2d 757, 759 (Iowa 1983); *Silas v. Percy,* 85 Wis.2d 716, 271 N.W.2d 171, 173 (1979). There is no question but that Mr. Bryson was convicted of a felony, sentenced to a term in a state institution, and confined at the Nashville Community Service Center. In short, he was an "inmate" of a state institution, unless the fact that he was on a three-day furlough at the time he was injured changed his classification.

T.C.A. § 41–21–227 authorizes the Tennessee Department of Corrections to grant three basic type furloughs to inmates. Several subsections provide for furloughs of short duration, from twelve hours to three days. These provisions make no reference to medical care. Section (h) authorizes furloughs up to six months for female prisoners for the purpose of giving birth and bonding. This provision specifically states that the State is not responsible for medical expenses. Finally, section (i) authorizes furloughs of indefinite duration for inmates in imminent peril of death, or who can no longer care for themselves due to severe physical or psychological deterioration. No statement is made regarding responsibility for medical expenses while the inmate is on this type of furlough.

The presence of a provision specifically excluding responsibility for medical treatment for pregnant female prisoners is support for an argument that as a general rule furloughed inmates are inmates for purposes of the duty to provide medical treatment. The State argues that section (h) is not intended as an exception to the general rule. Rather, the conclusion to be drawn from this exclusion is that while inmates on temporary furlough do not ordinarily require medical treatment, the nature of the pregnancy furlough is such that medical costs will inevitably be incurred. Thus, subsection (h) is simply a restatement of the law in a situation in which the issue is bound to arise. The problem with this argument is that no similar language appears in subsection (i), although furloughs under that section also involve medical conditions that would seem to contemplate further medical expenses.

One other code section may be considered relevant. The Tennessee Interstate Furlough Compact, T.C.A. § 41–23–201 et seq. authorizes the grant of out-of-state leave not to exceed four days to inmates in emergency situations. Where such emergency out-of-state furloughs are granted, the State of Tennessee, as the sending state, is liable for extraordinary costs arising from the furlough. "Such costs will generally be confined to emergency medical and special confinement and transportation needs." T.C.A. § 41–23–208(b).

These statutes, while not conclusive, indicate that a prisoner on a short furlough from a state institution remains in the custody of the State and is an inmate for the purpose of medical treatment. This is in keeping with the holding of this Court that an inmate on furlough is still in the custody of the State of Tennessee so that

---

**1.** It has been represented that the funds received in settlement, less attorney's fees, are being held in escrow to be used to pay a part of the bill for medical services submitted by Vanderbilt University Hospital. The record does not contain any information concerning the services rendered by Vanderbilt other than the statement of claimant that the expenses total $21,000.00.

he is subject to prosecution as an escapee when he fails to return promptly from the furlough. *See* T.C.A. § 39–5–702; *Lacey v. State*, 506 S.W.2d 809 (Tenn.Crim.App. 1974); *see also, Burns v. State*, 584 S.W.2d 827 (Tenn.Crim.App.1979) (work release); Annotation, *Failure of Prisoner to Return at Expiration of Work Furlough or other Permissive Release Period as Crime of Escape*, 76 A.L.R.3d 658 (1977). As noted by the judge who dissented in the Court of Appeals,

> If Mr. Bryson was "in custody" for purposes of the escape statutes, he was sufficiently "in custody" to be considered a convict or inmate for the purposes of the statutes pertaining to the provision of medical care to convicts or inmates.

This is not to say that the State cannot limit its obligation to provide medical care to furloughed prisoners. T.C.A. §§ 41–21–227(b) and (c) authorize the Tennessee Department of Corrections to promulgate rules governing the granting of furloughs and to impose "reasonable conditions" on inmates who receive furloughs. For instance, Mr. Bryson was required to waive his right to contest extradition in order to receive his furlough; however, he was neither requested nor required to waive his right to have the State of Tennessee provide him with medical care for injuries received while he was on furlough. Absent such a waiver, in our opinion the State of Tennessee had the obligation of providing reasonable medical care to Mr. Bryson in treatment of injuries he received while on furlough; and, where on learning of Mr. Bryson's hospitalization, the State left him to be treated in a private institution rather than to remove him to one of its own facilities, the State is under the obligation to pay the reasonable cost of such treatment not paid by a collateral source.

As heretofore noted, the record indicates that Mr. Bryson has received a partial payment of the medical expenses from the person responsible for Mr. Bryson's injuries. The exact amount of this payment, which we understand is being held in escrow, was not developed at trial in view of the determination of the Claims Commission that it did not have jurisdiction to decide Mr. Bryson's claim. Neither was the reasonableness of the treatment furnished Mr. Bryson or its cost tested. Since these are factors material to a determination of the State's ultimate liability, the claim of Mr. Bryson must be remanded to the Claims Commission for their determination. It is suggested that the medical care provider be made a party to the action, or in its absence, that safeguards be taken to see that the payment by the State of any medical expenses goes to the medical care provider.

 We note that the State in its reply brief still questions the jurisdiction of the Claims Commission to consider the claim of Mr. Bryson for payment of medical expenses. The State insists that the claim does not sound either in negligence or in contract. T.C.A. § 9–8–307(a)(1)(N) (Supp. 1988) gives the Commission the authority to hear claims arising from the negligent deprivation of statutory or constitutional rights. The Tennessee Department of Corrections is required by statute to furnish medical care to prisoners in its custody. As an inmate in a state correctional institution, Mr. Bryson had the statutory right to receive medical treatment at the State's expense. It follows that the Tennessee Claims Commission, under T.C.A. § 9–8–307(a)(1)(N), has jurisdiction to decide a claim brought by Mr. Bryson for deprivation of that statutory right.

The judgments of the trial court and of the Court of Appeals dismissing Mr. Bryson's claim are reversed. The cause is remanded to the Claims Commission for a determination of the amount to be paid by the State of Tennessee in satisfaction of the claim. Costs of the appeal will be paid by the State of Tennessee.

DROWOTA, C.J., and FONES, HARBISON, and O'BRIEN, JJ., concur.

DROWOTA, C.J., files separate concurring opinion, in which FONES, J. concurs.

DROWOTA, Chief Justice, concurring.

T.C.A. § 41–21–204(b) provides in pertinent part: "Any inmate who is ill shall

receive proper medical treatment." The question is whether a prisoner on furlough is an "inmate" for purposes of this right. The State avers that this Section authorizes medical care for persons within a penal institution. The State further avers that the statutes appear to contemplate the furnishing of medical care to persons under the control of and in the custody of state officials at a penal facility; that is, persons confined in an institution and becoming ill or being injured in connection with that confinement.

The majority opinion states that "as a general rule furloughed inmates are inmates for purposes of the duty to provide medical treatment." The majority holds, and I agree, that "a prisoner on a short furlough from a state institution remains in the custody of the State and is an inmate for the purpose of medical treatment. This is in keeping with the holding of this Court that an inmate on furlough is still in the custody of the State of Tennessee so that he is subject to prosecution as an escapee when he fails to return promptly from the furlough."

Judge Koch states in his dissenting opinion in the Court of Appeals that: "The furlough was not intended to be a release or discharge from the department's custody but rather was intended merely to extend the limits of Mr. Bryson's confinement. *Smith v. State*, 361 A.2d 237, 238 (Del.1976); *State v. Strollo*, 370 A.2d 675, 678 (Me.1977); *see also Lacey v. State*, 506 S.W.2d 809, 810 (Tenn.Crim.App.1974). A person on furlough is still a prisoner and is still in custody even though he or she has been given the privilege of being temporarily outside of the institution. *People v. Mercurio*, 169 Cal.App.3d 1108, 1112, 216 Cal.Rptr. 1, 3–4 (1985); *State v. Williams*, 490 So.2d 255, 260 (La.1986); *State v. Strollo*, 370 A.2d at 678."

I would also point out that the accident occurred at 5:35 a.m. on July 1, 1987, near Mount Juliet. Mr. Bryson's furlough expired by its own terms at 10:30 a.m. that same day. Thus, five hours after the accident, Mr. Bryson was no longer on furlough. Clearly, by 10:30 a.m. on July 1,

1987, after the State learned of Mr. Bryson's hospitalization at Vanderbilt University Hospital and left him to be treated in that institution rather than transferring him to one of its own facilities, the State became obligated to pay for his reasonable medical treatment.

Upon the expiration of Bryson's furlough, he was subject to the control, direction and supervision of the Tennessee Department of Corrections, whether or not the Department of Corrections exercised its supervision. His status was no different than that of any inmate whose medical condition requires treatment at a free-world hospital.

The medical bills have not been itemized. However, the length of the hospital stay after the furlough expired, seven to eight days, is proof that some, if not most of the medical bills, were incurred during that time. The dismissal of the case on the ground that Mr. Bryson was on furlough when injured was not warranted as a factual matter. I, therefore, concur with the majority opinion and would remand this matter to the Claims Commission to determine what were the reasonable costs of treatment not paid by a collateral source. The State is entitled to equitable subrogation for the sums collected by Plaintiff, less attorney's fees.

FONES, J., joins in this concurring opinion.