**CHATTANOOGA–HAMILTON COUNTY HOSPITAL AUTHORITY, d/b/a Erlanger Health System,**

v.

**BRADLEY COUNTY, Tennessee.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 30, 2001.

Permission to Appeal Denied by Supreme Court Feb. 11, 2002.

Fred H. Moore and Joseph R. White, Chattanooga, TN, for appellant, Chattanooga–Hamilton County Hospital Authority, d/b/a Erlanger Health Systems.

Robert S. Thompson, Cleveland, TN, for appellee, Bradley County, Tennessee.

## OPINION

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Plaintiff sued for payment of medical bills incurred by arrestee when he was shot by Bradley County officers during his apprehension. The Trial Court held the County was only responsible for medical bills incurred by prisoner's "confined in the jail" under Tenn.Code Ann. § 41–4–115, and arrestee was not confined in jail within the meaning of the statute. On appeal, we reverse.

In this action, Chattanooga–Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger"), sought to recover for medical care provided to Ricky Vincent Dunn, who was shot by a Bradley County officer during a standoff and arrest.[1]

The pertinent facts are not in dispute. A Bradley County officer shot Dunn in the process of an arrest, and Bradley County EMS requested an air ambulance service from Erlanger. Dunn was transported to Erlanger, accompanied by a County deputy, and was admitted. Dunn was under a police hold while in Erlanger at the request of Bradley County, and upon his release from the hospital, was picked up by the Bradley County Sheriff's Department and taken to the County Jail.

The Trial Court ruled that Bradley County had a duty to provide medical treatment for Dunn, as a detainee, but ruled that Tenn.Code Ann. § 41–4–115, which states that the county will provide medical care for prisoners confined in the jail did not apply, because Dunn was not confined in jail at the time of his injury. The Court also ruled that Erlanger could not recover either under the theory of implied contract or *quantum meruit.*

■ The Trial Court correctly found that it was the County's duty to provide medical care to Dunn. In *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), officers attempted to detain an individual who attempted to flee, and the individual was shot by an officer. An ambulance was summoned and the individual was taken to Massachusetts General Hospital. The hospital sued the City of Revere seeking payment for medical services rendered. Justice Blackman, speaking for the Court, said at p. 2983 of the Opinion:

The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons, such as Kivlin, who have been injured while being apprehended by the police. In fact, the due process rights of a person in Kivlin's situation are at least as great as the Eighth Amendment protections available to a convicted prisoner. (Citation omitted). We need not define, in this case, Revere's due process obligation to pretrial detainees or to other persons in its care who require medical attention. (Citations omitted). Whatever the standard may be, Revere fulfilled its consti-

1. Dunn was subsequently charged with attempted second-degree murder, and was sentenced to six years in prison.

tutional obligation by seeing that Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury. And as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.

It is the County's position that State law does not require the payment of this bill for medical services on the facts of this case. Tenn.Code Ann. § 41–4–115 provides, in pertinent part:

> **Medical care of prisoners.**—(a) The county legislative bodies alone have the power, and it is their duty, to provide medical attendance upon all prisoners confined in the jail in their respective counties. The county legislative bodies shall allow the county jail physician such compensation, to be paid by their respective counties, as may be fixed by the county legislative body agreed upon in writing between the county and the attending jail physician, or as may be fixed by the county legislative body.
>
> . . .
>
> (d) Any county or municipality may, by resolution or ordinance adopted by a two-thirds (⅔) vote of its legislative body, establish and implement a plan authorizing the jail or workhouse administrator of such county or municipality to charge an inmate in such jail or workhouse a co-pay amount for any medical care, treatment, or pharmacy services provided to such inmate by the county or municipality. The county or municipality adopting the co-pay plan shall establish the amount the inmate is required to pay for each service provided. Nothing in this subsection shall be construed as authorizing a county or municipality to deny medical care, treatment or pharmacy services to an inmate who cannot pay the co-pay amount established by the plan.
>
> . . .
>
> (f) Notwithstanding any other provision of law to the contrary, a plan established pursuant to subsection (d) may also authorize the jail or workhouse administrator to seek reimbursement for the expenses incurred in providing medical care, treatment, hospitalization or pharmacy services to an inmate incarcerated in such jail or workhouse from an insurance company, health care corporation, TennCare or other source, if the inmate is covered by an insurance policy, TennCare or subscribes to a health care corporation or other source for those expenses.

The crux of the Chancellor's ruling in denying recovery was "[t]he statute states that the prisoner must be confined in jail. In this case, the prisoner was not confined in jail prior to incurring the medical bills in this case."

*Revere* establishes that Bradley County had a constitutional obligation to provide medical treatment for Dunn's injuries, but properly held that the cost of the care allocation was a matter of State law. Implicit in this holding is the requirement that the State or responsible governmental agency, in discharging its duty to provide these medical services, must provide the method for payment of these services. Our Supreme Court case of *Bryson v. State*, 793 S.W.2d 252 (Tenn.1990),[2] is instructive in that it liberally construed the Code provisions dealing with State prisoners. In *Bryson*, a prisoner was injured while out of the jail on a temporary fur-

---

**2.** In *Davis v. Stanifer*, 1994 WL 44448 (Tenn. Ct.App. Feb.16, 1994) this Court considered *Bryson*, but did not reach the question of the State's liability.

lough, and was taken to Vanderbilt Hospital for treatment. The prisoner then filed a claim against the State for payment of his medical expenses.

The Court looked at the statutory scheme regarding inmates (Tenn.Code Ann. § 41–21–101 *et seq.*), and determined that an inmate who was ill was entitled to medical care pursuant to Tenn.Code Ann. § 41–21–204(b), and that "inmate" should be defined as an individual confined in an institution such as a prison. *Id.* The Court found that Bryson was an inmate, convicted of a felony and sentenced to a prison term, and that the fact that he was on furlough did not change his status. *Id.* The Court said that Bryson was technically in the State's custody, and that the State was responsible for paying for his medical care.

Tenn.Code Ann. § 41–4–115 requires counties to pay for medical care on prisoners "confined in the jail in their respective counties". The County's argument and the Trial Court's ruling are based upon the premise that the County must only pay for care for "prisoners confined in jail", and since Dunn was not yet confined, the County is not liable. This legislation is clearly remedial, however, and as such is liberally construed. *See Nelms v. State,* 532 S.W.2d 923 (Tenn.1976); *Nutt v. Champion Intern. Corp.,* 980 S.W.2d 365 (Tenn.1998); *Big Fork Mining Co. v. Tennessee Water Quality Control Board,* 620 S.W.2d 515 (Tenn.Ct.App.1981). In *Bryson,* our Supreme Court suggested that being "in custody" was sufficient to trigger governmental liability for the prisoner's care, and discussed that a prisoner on furlough is still technically in the State's custody because he would be subject to prosecution as an escapee if he did not return from the furlough. Similarly, in this case, it is clear that Dunn was in police custody, and he would have been arrested and taken to jail, had he not been wounded in the shoot-out with the deputy. Moreover, Dunn was on police hold while in the hospital and was picked up by the Bradley County Sheriff's Department and transported to the jail, upon being discharged from Erlanger. Applying the analysis of *Bryson,* Dunn was in the custody of the Sheriff's Department. We hold that Dunn's circumstances fall within the ambit of Tenn.Code Ann. § 41–4–115 which requires the County to provide and pay for medical services rendered under these circumstances. *See Watt v. State,* 894 S.W.2d 307 (Tenn.Crim.App.1994) ("in custody" means "any possibility of restraint on liberty" and the danger that one might suffer collateral legal consequences). *See also State v. McCraw,* 551 S.W.2d 692 (Tenn.1977) ("in custody" means "any possibility of restraint on liberty").

■ Additionally, the County argues that it was unaware that Erlanger was now charging for treatment of prisoners, and that Erlanger should have attempted to obtain satisfaction of the charges for Dunn's medical care from other sources.

As to the first argument, the EMS personnel, employees of Bradley County, made the decision regarding where Dunn would be transported, in accordance with their rules and regulations. Because Erlanger is a level one trauma center and the only one in the region, the condition of the patient dictated that he be take to Erlanger.[3] Under the circumstances, the County was required to furnish the medical care afforded by Erlanger, which would have been the case, whether the County was

3. The regulations regarding EMS state that a patient with certain vital signs and a level of consciousness should be taken to a level one trauma center. Tenn.Comp.R. and Regs. 1200–12–1–11(7).

aware that they would be charged for this treatment or not.

An employee of Erlanger testified that they did not bill TennCare for this service because TennCare does not pay for charges incurred during illegal activity.[4] We find the County's arguments to be without merit.

We reverse the Judgment of the Trial Court and remand for entry of a Judgment against Bradley County for the total amount of plaintiff's medical services provided to the prisoner.

The cost of the appeal is assessed to Bradley County.

---

4. It was Erlanger's position that TennCare would not cover the expenses for Dunn because of Tennessee Opinion, Attorney General # 97–010 which stated that incarcerated alleged offenders may be denied TennCare coverage. The regulations dealing with TennCare, however, states that inmates of correctional facilities are excluded. Tenn. Comp.R. and Regs. 12–13–12–.02(3).