# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 27, 2015 Session

## TERRY HOLLIDAY v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20101729  Nancy Miller-Herron, Commissioner, TN. Claims Commission**
**Western Division**

_____

**No. W2014-02188-COA-R3-CV – Filed December 16, 2015**
_____

This is an appeal by the State of Tennessee from the Tennessee Claims Commission's award of a judgment against it.  While he was an inmate in the State's custody, Plaintiff sustained injuries when he fell out of a pickup truck that was being operated by a State employee.  Plaintiff filed a complaint with the Claims Commission in which he alleged that the State's negligence caused his injuries and sought damages for, among other things, the medical expenses that were incurred as a result of the fall.  The State argued that it should receive a credit against any award of damages for the medical expenses Plaintiff incurred during his incarceration because it paid those expenses through its contracts with two private medical vendors.  The Claims Commission disagreed and held that evidence of payments made by the medical vendors for Plaintiff's treatment was barred by the collateral source rule.  The Claims Commission awarded Plaintiff $125,000 in damages, which included damages for the medical expenses that he allegedly incurred.  On appeal, we conclude that because the State was required by law to pay for all medical expenses Plaintiff incurred during his incarceration, the Claims Commission erred in considering the cost of the medical services provided to Plaintiff in calculating his damages.  We therefore vacate the Claims Commission's award of damages and remand this matter for a new trial on the issue of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Eric A. Fuller, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee.

Glenn K. Vines and Eric A. McEnerney, Memphis, Tennessee, for the appellee, Terry Holliday.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

On September 1, 2009, Terry Holliday, then an inmate in the custody of the State of Tennessee Department of Correction ("TDOC"), was injured while assigned to a work detail in Lauderdale County, Tennessee. Immediately prior to being injured, Holliday was riding with other inmates in the bed of a pickup truck driven by a TDOC officer. As the officer accelerated the truck to go up a hill, the truck hit a mound of dirt, and Holliday fell out of the truck and was injured. He was transported by ambulance to a local hospital where tests revealed that he had fractured multiple ribs. He was released from the hospital and returned to the prison the same day but continued to experience severe pain in his chest in the days that followed. On September 19, 2009, Holliday was taken back to the local hospital where further testing revealed blood inside his lungs. He was immediately transported by ambulance to a hospital in Nashville where he underwent surgery to remove several liters of coagulated blood from his lungs. Holliday spent approximately two weeks recovering from the surgery at the hospital in Nashville before being taken back to the prison. He was released from TDOC custody in July 2010.

On May 27, 2010, Holliday filed a notice of a claim for damages against the State of Tennessee ("State") with the Tennessee Division of Claims Administration. On August 25, 2010, the claim was transferred to the Tennessee Claims Commission ("Claims Commission") pursuant to Tennessee Code Annotated section 9-8-402(c).[1] On August 30, 2010, Holliday filed a complaint with the Claims Commission in which he alleged that his fall from the truck, and the injuries he suffered as a result, were caused by the TDOC officer's negligent operation of the truck. As an attachment to his complaint, Holliday submitted a summary of the charges for the medical services he received in September 2009. The State filed an answer denying the material allegations of the complaint and asserting that Holliday's own negligence was the sole cause of his injuries.

---

[1] "If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission." Tenn. Code Ann. § 9-8-402(c) (2012).

On October 3, 2013, attorneys for both parties met to take the deposition testimony of Thomas Rawlinson, M.D. ("Dr. Rawlinson"). During the deposition, Dr. Rawlinson reviewed documents related to the medical treatment that Holliday received as a result of the fall. Holliday's attorney submitted a summary of Holliday's medical bills with supporting invoices that reflected that Holliday incurred $30,922.58 in medical expenses in September 2009. Dr. Rawlinson reviewed the documents and testified that Holliday's medical treatment and expenses were caused by his fall from the truck and were reasonable and necessary.

Following the deposition of Dr. Rawlinson, the State filed a motion in limine seeking to exclude evidence of the $30,922.58 in medical expenses that Holliday incurred in September 2009. In support of its motion, the State argued that Holliday was not entitled to recover medical expenses he incurred while in TDOC custody because those expenses were paid by the State through its contracts with two medical vendors—First Medical Management ("FMM") and Correctional Medical Services ("CMS"). The State asserted that the Claims Commission should therefore exclude evidence of the medical expenses in calculating the amount of Holliday's damages. Alternatively, the State argued that if the Claims Commission did not exclude evidence of the medical expenses, the State should receive a credit equal to the amount of the medical expenses towards any award of damages Holliday received.

A trial of Holliday's claim was held before the Claims Commission on April 17, 2014. At the outset, the Claims Commissioner stated that she would allow Holliday to make an offer of proof regarding the medical expenses that he incurred in September 2009 but would allow the parties to submit additional briefs on their admissibility post-trial.[2] Holliday introduced the deposition testimony of Dr. Rawlinson and a summary of the medical expenses Holliday incurred in September 2009. The summary reflected that the total amount of medical expenses Holliday incurred in September 2009, $30,922.58, was the sum of six separate charges from medical providers for services ranging from transportation by ambulance to surgery. Each of the charges reflected in the summary was supported by an attached invoice from the medical provider. Several of the invoices reflected specific payments that had been made by FMM or other unnamed insurance carriers.

The Claims Commission also heard testimony from several witnesses, including Holliday. During his testimony, Holliday stated that he did not have health insurance.

---

[2] Based on the hearing transcript, it appears that the Claims Commissioner decided not to make an immediate ruling on the admissibility of evidence related to Holliday's medical expenses because Holliday did not respond to the State's motion in limine until the day before trial.

3

Additionally, on cross-examination, Holliday testified that he had not received invoices for or made payments on the medical expenses:

Q. Okay. And I would like to talk about these medical bills you received. You testified you went to the hospital and an ambulance came and got you and things of that nature; correct?

A. Yes, sir, that's correct.

Q. Okay. And did you actually receive bills while you were in prison for these medical visits?

. . . .

THE WITNESS: I was not given any bills.

Q. So you haven't been billed for any of those medical services?

A. I haven't been --

. . . .

Q. So you haven't received any of the bills, just to clarify.

A. I haven't received any as of yet.

Q. Okay. Have you personally had to pay any of these bills?

A. Only what I've incurred since I've been out.

Q. Okay. July of 2010 since; correct?

A. Yes.

Lisa Parks, the TDOC's Director of Budget and Fiscal Services, also testified at the trial. Parks testified that the State meets its legal obligation[3] to pay the medical expenses incurred

---

[3] Tennessee Code Annotated section 41-21-204(b) (2014) requires the State to provide medical treatment to inmates in its custody. *See also Bryson v. State*, 793 S.W.2d 252, 254 (Tenn. 1990) (holding the State responsible for medical expenses of an inmate injured in an automobile accident while on a three-day furlough from prison).

4

by inmates in its custody through its contracts with FMM and CMS. She explained that, pursuant to its contracts with the two medical vendors, the State pays a specified rate per day for each inmate in its custody, and, in return, FMM and CMS pay medical providers directly for inmate medical expenses up to $50,000. Accordingly, Parks testified that FMM and CMS paid the medical expenses Holliday incurred in September 2009 on the State's behalf.

Following the parties' submission of post-trial briefs, the Claims Commission entered its final order on July 11, 2014. As an initial matter, the Claims Commissioner ruled that the collateral source rule barred the State from receiving any credit for payments made by FMM or CMS:

> The Commission **FINDS** that FMM and CMS were collateral sources akin to insurance companies. As the State's own witness noted, their names were even listed as the policy name on the medical invoices. Therefore, the fact that payments were made by FMM and/or CMS for Claimant's medical treatment is <u>not</u> admissible and will not be considered by the Commission when assessing damages against the State.
>
> It should be noted that the State presented no evidence regarding the amount of credit due to the State for payments allegedly made to FMM and CMS on behalf of Claimant.

After reviewing the trial testimony and the deposition of Dr. Rawlinson, the Claims Commission's order stated:

> Based on Claimant's pain and suffering, medical expenses, loss of enjoyment of life and all other damages, the Commission **FINDS** that Claimant sustained damages in the amount of one hundred twenty-five thousand dollars ($125,000).
>
> The Commission declines to find that Claimant was at fault. Claimant was assigned the task of picking okra in the field. To do that, he had to ride in the back of the white Dodge with the broken bench and rotten rail. There was no evidence whatsoever that he would have been free to decline.
>
> The Commission, therefore, **FINDS** that zero percent (0%) of the fault reasonably can be apportioned to the Claimant. The Commission further FINDS that one hundred percent (100%) of the fault reasonably can be apportioned to the State of Tennessee.

Accordingly, the Claims Commission awarded Holliday a judgment against the State in the amount of $125,000. Following the Claims Commission's denial of the State's motion to alter or amend, the State filed a timely notice of appeal to this Court.

## ISSUE PRESENTED

The State raises the following issue on appeal, slightly restated from its brief:

1. Whether the Claims Commission erred in applying the collateral source rule to award damages related to Holliday's medical expenses that had already been paid by the State.

## STANDARD OF REVIEW

Appeals from a decision of the Claims Commission are governed by the same rules applicable to appeals from trial court civil actions. Tenn. Code Ann. § 9-8-403(a)(1) (2012). Thus, when the Claims Commissioner acts as the finder of fact, our review of his or her findings is de novo upon the record with a presumption of correctness unless the evidence preponderates against the Commissioner's findings. Tenn. R. App. P. 13(d); *Usher v. Charles Blalock & Sons, Inc.*, 339 S.W.3d 45, 58 (Tenn. Ct. App. 2010). Still, we review the Claims Commissioner's legal conclusions de novo with no presumption of correctness. *Ray Bell Const. Co., Inc. v. Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011).

## ANALYSIS

As an initial matter, we note that, in his appellate brief, Holliday contends that the State waived the affirmative defenses of payment, credit, set-off, or accord and satisfaction by failing to raise them as an affirmative defense in its Answer as required by Rule 8.03 of the Tennessee Rules of Civil Procedure. We note, however, that Holliday's attorney did not object to the issue at trial and, in fact, acknowledged that the State should receive credit for payments it made directly to medical providers on Holliday's behalf:

[Holliday's Attorney]: Well, I guess what we have from our perspective is I certainly agree that the State is entitled to a credit --

THE COURT: Uh-huh.

[Holliday's Attorney]: -- for all amounts they paid if it was paid directly by the State of Tennessee.

THE COURT: Right.

Thus, even if we accept that the State should have raised the credit issue as an affirmative defense, the theory was tried by the express or implied consent of the parties as contemplated by Rule 15.02 of the Tennessee Rules of Civil Procedure.[4]  We therefore reject Holliday's assertion that the State waived the argument by failing to raise it in its Answer.

The State contends that the Claims Commission erred in holding that evidence of payments made by FMM and CMS for Holliday's treatment was barred by the collateral source rule.  Tennessee has adopted the collateral source rule as it is set forth in Restatement (Second) of Torts section 920A.  *Fye v. Kennedy*, 991 S.W.2d 754, 763 (Tenn. Ct. App. 1998) ("The subject before us is addressed in [Restatement (Second) of Torts section 920A], which we adopt.").  That section provides:

> § 920A Effect of Payments Made to Injured Party
>
> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
>
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Restatement (Second) of Torts § 920A (1977).  Additionally, comment a to Section 920A provides:

> *a. Payments by or for defendant.*  If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability.  This is also true of payments made under an insurance policy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause. . . .  The rule applies to benefits other than cash payments.

Restatement (Second) of Torts § 920A cmt. a.  Thus, the collateral source rule provides that when a plaintiff receives a payment or benefit from a collateral source, *other than payments made by or for the defendant*, evidence of the payment or benefit is not admissible and does

---

[4] "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Tenn. R. Civ. P. 15.02.

7

not reduce or mitigate the defendant's liability. *Fye*, 991 S.W.2d at 763 (quoting *Donnell v. Donnell*, 415 S.W.2d 127, 134 (Tenn. 1967)). In several past cases, Tennessee courts have recognized that defendants should receive credit for payments towards a plaintiff's medical expenses made on their behalf prior to trial.

In *Byrd v. Stuart*, 450 S.W.2d 11 (Tenn. 1969), the plaintiffs and defendant were in an automobile accident in which the plaintiffs were injured. *Id*. at 12. Following the accident, the defendant's insurance carrier, acting as the defendant's agent, paid the plaintiffs $1,040 for which the plaintiffs executed an agreement titled "Receipt for Expenses Advanced." *Id*. In pertinent part, the agreement stated that, "[t]his amount is to be credited to any final settlement or to the amount payable under our policy for any judgment which you may obtain as a result of your accident." *Id*. Later, the plaintiffs filed a lawsuit and received a jury verdict against the defendant. *Id*. The defendant sought a credit against the jury's verdict for the amount of the advanced payment, but the trial court refused. *Id*. at 13. Thereafter, the defendant filed a separate lawsuit seeking an injunction to prevent the plaintiffs from enforcing the full amount of their judgment. *Id*. The trial court dismissed the defendant's claim. *Id*. On appeal, the Tennessee Supreme Court set aside the trial court's ruling and stated that, under the circumstances, it would "manifestly be an injustice" to allow the plaintiffs to recover the full amount of the jury's verdict. *Id*.

This Court faced similar factual circumstances in *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn. Ct. App. 1988). Like *Byrd*, the case involved an automobile accident between the plaintiff and the defendant. *Id*. at 433. Following the accident, the defendant's insurance carrier paid $1,407 to plaintiff to cover his medical expenses. *Id*. Later, the plaintiff filed a lawsuit, and evidence of his medical expenses was presented to the jury. *Id*. The jury was not informed that the defendant's insurer had already paid the expenses and returned a verdict in favor of the plaintiff for $7,500. *Id*. The defendant filed a motion seeking a credit against the jury's verdict for the amount of the advanced payment, but the trial court refused. *Id*. The defendant appealed, and this Court reversed. *Id*. at 436. The Court acknowledged that, unlike the plaintiff in *Byrd*, the plaintiff in *Howard* did not expressly agree that the advance payment he received from the defendant's insurance carrier would be credited against any judgment. *Id*. at 434. Nevertheless, the court determined that the circumstances implied such an agreement. *Id*. In holding that the defendant was entitled to a credit, the court stated that, "[t]he humanitarian practice of making advance payments to or for injured parties is to be commended and encouraged." *Id*. at 435.

It is clear in this case that FMM and CMS acted as insurance carriers for the State and paid Holliday's medical expenses on behalf of the State in a manner analogous with the advanced payments made by the defendants' insurance carriers in *Byrd* and *Howard*. Indeed, the fact that FMM and CMS acted as insurance carriers for the State is undisputed in this

case. In his appellate brief, Holliday concedes that FMM and CMS acted as insurance carriers for the State but, based on that fact, argues that FMM and CMS were collateral sources and that evidence of their payments for Holliday's medical expenses should be excluded. Holliday relies on this Court's opinion in *Cherry v. McCullough*, No. 02A01-9201-CV-00005, 1992 WL 379074 (Tenn. Ct. App. Dec. 21, 2012), in support of his argument. His reliance on that case is misplaced, however, because the advance payments to the plaintiff in that case were made by the plaintiff's employer's insurance carrier, not by the defendant or any party acting on its behalf. *Id.* at *5-6. Simply put, Holliday's argument overlooks the distinction between payments made by the plaintiff's insurer and payments made by the defendant's insurer. Because FMM and CMS acted as insurance carriers for the State and paid Holliday's medical expenses on the State's behalf, the State should not be liable for those expenses.

Despite its similarities, however, there is one notable aspect of this case that makes it distinguishable from *Byrd* and *Howard*. Unlike the defendants in those cases, the defendant here was not engaging in the humanitarian practice of making advance payments to the plaintiff, but was legally obligated to pay the full amount of the plaintiff's medical expenses while the plaintiff was in the State's custody. *See* Tenn. Code Ann. § 41-21-204(b). Because the State was required by law to pay the full amount of the medical expenses that Holliday incurred during his incarceration, we conclude the Claims Commission should not have considered evidence of the medical expenses in calculating the amount of Holliday's damages award.[5] While we do not hold that evidence of the medical expenses Holliday incurred during his incarceration was not admissible for any purpose, we conclude that, given the unique circumstances of this case, such evidence was not admissible for proving the amount of the medical expenses as a measure of damages.

Though the Claims Commission's order states that part of its $125,000 award is intended to compensate Holliday for medical expenses, it does not specify the dollar amount assigned to each measure of damages and, in particular, what portion of the total award is attributable to the medical expenses the plaintiff incurred during incarceration. Because we cannot speculate as to what portion of the Claims Commission's award was erroneously awarded, we must vacate the entire award of the Claims Commission and remand this matter for a new trial on the issue of damages. On remand, we instruct the Claims Commission not to award plaintiff damages for medical expenses incurred during his incarceration.

---

[5] This should not be construed as limiting consideration of plaintiff's medical expenses that arose out of this injury and were incurred subsequent to his release from the State's custody in July 2010. Clearly, any medical expenses incurred by the plaintiff, arising out of this injury, post incarceration may be considered as part of his damages.

## CONCLUSION

In light of the foregoing, we vacate the Claims Commission's award and remand this matter for a new trial on the issue of damages. In calculating the amount of its award on remand, the Claims Commission should not award damages for the cost of the medical services provided to Holliday during his incarceration. The costs of this appeal are taxed to the Appellee, Terry Holliday, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

10