IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 8, 2008 Session

**CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY
d/b/a ERLANGER HEALTH SYSTEM v.
BRADLEY COUNTY, TENNESSEE ET AL.**

**Appeal by permission from the Court of Appeals
Chancery Court for Bradley County
No. 01-386    Jerri S. Bryant, Chancellor**

_____

**No. E2006-01457-SC-R11-CV - Filed March 10, 2008**

_____

Chattanooga-Hamilton County Hospital Authority, conducting its operations as Erlanger Health System, filed suit against Bradley County for the medical expenses of a suspect injured in a shooting at a bar in Cleveland. The trial court awarded judgment for a part of the claim, and the Court of Appeals, in a divided opinion, affirmed. We granted review under Rule 11 of Tennessee Rules of Appellate Procedure in order to construe the statute governing the obligation of counties to pay the medical expenses of a prisoner confined in a jail or otherwise in police custody. Because the statute does not extend the obligation of the county to these circumstances, the judgment of the Court of Appeals is reversed and the complaint is dismissed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;
Cause is Dismissed**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

James F. Logan, Jr. and Robert S. Thompson, Cleveland, Tennessee, for the appellant, Bradley County, Tennessee.

Stacy Lynn Archer and Ronald D. Wells, Chattanooga, Tennessee, for the defendant, City of Cleveland, Tennessee.

Fred Moore, C. Eugene Shiles, and Joseph R. White, Chattanooga, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority.

# OPINION

## Factual and Procedural History

During the early morning hours of March 24, 2001, Brandon Ramsey and several other individuals were involved in a shooting at Drea's Kitchen, a bar located in Cleveland, Tennessee. Ramsey and Jeremy Holcomb, who had been ordered to leave the bar, first walked to their automobile and then fired several shots into the establishment, which was filled with other patrons. Jeff Thompson, an off-duty Chattanooga police officer, was at a birthday party inside the bar. He returned fire, wounding both Holcomb and Ramsey. During the battle, several individuals suffered wounds, including Officer Thompson. Ramsey, who had suffered injuries to both legs, was first transported to Bradley County Memorial Hospital and then airlifted to the Chattanooga-Hamilton County Hospital Authority, which conducts business as Erlanger Health Systems ("Erlanger").[1]

Detective John Dailey, Jr. of the Cleveland Police Department led the investigation.[2] He interviewed Holcomb at Bradley County Memorial at approximately 6:30 a.m. Holcomb was neither arrested at that time nor placed on a "police hold" and was released shortly after the interview. Later, some eighteen to twenty hours after the shooting, Detective Dailey obtained a warrant for Ramsey's arrest, charging him with several offenses, including attempted first degree murder. A warrant was also issued for Holcomb. Although the Ramsey arrest warrant was never served, Detective Dailey telephoned Erlanger to determine when and if he would be able to talk and then asked an official in the hospital security department for a "police hold." He then faxed a copy of the arrest warrant to the Chattanooga Police Department requesting service upon Ramsey's release.

On March 25, 2001, the day following the shooting, notice of "police hold" was placed in Ramsey's medical chart at Erlanger. The notice included information identifying the Bradley County Sheriff's Department as the requesting agency, the nature of the charge against Ramsey, the complaint number, and the name of Detective Dailey. The document included the following language: "HELD FOR POLICE . . . . THE NURSING UNIT will notify appropriate Police Headquarters 24 Hours BEFORE dismissal of a patient."

From telephone conversations with Erlanger personnel, Detective Dailey understood that he would be notified prior to Ramsey's discharge. Almost two weeks later, however, on April 5, 2001, Erlanger officials notified Detective Dailey that Ramsey had caused some trouble and that any police hold could not be honored unless a guard was supplied. When the detective was unable to arrange for a guard, Erlanger removed the hold notation. Ramsey was discharged on April 21, 2001.

---

[1] Erlanger is a governmental hospital authority created by Private Act in 1976.

[2] It is undisputed that individuals charged with state offenses by the City of Cleveland Police Department are placed into custody at the Bradley County Judicial Complex.

An affidavit by Lieutenant Lee Mosley of the Erlanger Security Department confirmed the hospital's policy on police holds at the time of Ramsey's admission. The newly revised policy required the police agency seeking a hold on patients charged with felonies to be at the hospital at all times. Lieutenant Mosley stated that he had several conversations with Detective Dailey in an effort to secure a guard before removing the hold notation.

In the month following his discharge from Erlanger, Ramsey was indicted by a Bradley County Grand Jury on three counts of attempted first degree murder and other charges. Holcomb was also indicted. Six months later, Ramsey was arrested in Cobb County, Georgia and then returned to Bradley County where he later pled guilty to two counts of aggravated assault.

The total charge for all of the medical services provided Ramsey between March 24, 2001, and April 21, 2001, was $117,177.36. In its complaint, Erlanger sought to recover payment of Ramsey's medical expenses from both the City of Cleveland and Bradley County, the defendants in this case. Erlanger, the City of Cleveland, and Bradley County all filed motions for summary judgment. The trial court dismissed the City of Cleveland from the lawsuit and granted Erlanger's motion for summary judgment for medical services rendered from March 24, 2001, through April 5, 2001, the date the police hold was lifted by Erlanger; however, the trial court declined to grant an award of medical expenses from April 6th through the date of discharge. After reference to a special master, the trial court entered judgment for Erlanger against Bradley County in the sum of $51,095.00, representing the period of time from Ramsey's admission to the hospital until the termination of the police hold.

On direct appeal by Bradley County,[3] a majority of the Court of Appeals affirmed, ruling that the statute as interpreted by case law obligated the county for the medical expenses until the date the police hold was removed at the hospital. In a concurring opinion, Judge Charles D. Susano observed that but for the holding in Chattanooga-Hamilton County Hospital Authority v. Bradley County ("Erlanger I"), 66 S.W.3d 888, 891-92 (Tenn. Ct. App. 2001), he would have held that the statute would not have permitted any recovery. In a dissent, Judge Sharon G. Lee opined that an "unofficial" police hold was inadequate to place any obligation for medical expenses on the county. This Court granted a Rule 11 application to consider whether these circumstances obligated Bradley County for the cost of Ramsey's treatment.

Bradley County argues that the governing statute cannot be interpreted to authorize the payment of Ramsey's medical expenses. See Tenn. Code Ann. § 41-4-115 (2006). It also asks this Court to overrule the Court of Appeals' holding in Erlanger I, an opinion based upon the opinion of this Court in Bryson v. State, 793 S.W.2d 252 (Tenn. 1990). In response, Erlanger contends that because the statute is remedial, a liberal construction is required in order to meet the legislative objective, thereby obligating Bradley County for medical expenses.

**Scope of Review**

---

[3] There was no appeal of the trial court's dismissal of the claim against the City of Cleveland.

-3-

The standard for review of a grant of summary judgment by the trial court is, of course, de novo. See Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). Because the question is one of law, no presumption of correctness attaches to the grant of a summary judgment. Hembree v. State, 925 S.W.2d 513, 515 (Tenn. 1996). A summary judgment, when based upon a statement of undisputed facts, pleadings, depositions, answers to interrogatories, admissions, and affidavits, is appropriate only when (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; Blair, 130 S.W.3d at 764. Further, the appellate courts "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993).

The interpretation of a statute and its application are matters of law. Patterson v. Tenn. Dept. of Labor & Workforce Dev., 60 S.W.3d 60, 62 (Tenn. 2001) (citing Beare Co. v. Tenn. Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993)). Questions of law are reviewable de novo with no presumption of correctness. Comdata Network, Inc. v. Tenn. Dept. of Revenue, 852 S.W.2d 223, 224 (Tenn. 1993); Tenn. Farmers Mut. Ins. Co. v. Witt, 857 S.W.2d 26, 29 (Tenn. 1993).

**Analysis**

Standards of Fourteenth Amendment due process under the federal constitution obligate state and local governments to provide medical care to persons injured during an arrest.[4] City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (recognizing that the Due Process Clause requires "the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police"). However, "as long as the governmental entity ensures that the medical care needed is . . . provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law." Id. at 245.[5]

In this state, any liability for medical expenses for local and state prisoners in a particular county arises by virtue of Tennessee Code Annotated section 41-4-115:

Medical care of prisoners.– (a) The county legislative bodies alone have the power, and it is their duty, to provide medical attendance upon all prisoners confined in the jail in their respective counties. The county legislative bodies shall allow the county

---

[4] After a formal adjudication of guilt, the Eighth Amendment of the United States Constitution, proscribing cruel and unusual punishment, protects prisoners from governmental indifference to their serious medical needs. City of Revere, 463 U.S. at 243-44.

[5] "If . . . the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay. There are, however, other means by which the entity could meet its obligation. Many hospitals are subject to federal or state laws that require them to provide care to indigents." City of Revere, 463 U.S. at 245.

jail physician such compensation, to be paid by their respective counties, as may be fixed by the county legislative body agreed upon in writing between the county and the attending jail physician, or as may be fixed by the county legislative body.

(b) The state shall be liable for expenses incurred from emergency hospitalization and medical treatment rendered to any state prisoner incarcerated in a county jail or workhouse, provided that prisoner is admitted to the hospital. The sheriff of the county in which such state prisoner is incarcerated shall file a petition with the criminal court committing the state prisoner to the county jail or workhouse attaching thereto a copy of the hospital bills of costs for the state prisoner. It is the duty of the court committing such state prisoner to the county jail or workhouse to examine bills of costs, and if the costs are proved, the court shall certify the fact thereon and forward a copy to the judicial cost accountant. The expenses for emergency hospitalization or medical treatment shall be paid in the same manner as court costs. Claims for incidents occurring after March 1, 1977, shall be reimbursed if otherwise authorized by this subsection (b).

Tenn. Code Ann. § 41-4-115(a), (b) (2006) (emphasis added).

Our resolution of the dispute depends upon statutory interpretation. Well defined precepts apply. "'[T]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). In construing legislative enactments, we presume that every word in a statute has meaning and purpose; each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). "When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). In that instance, our obligation is to enforce the written language without reference to the broader statutory intent, the history of the legislation, or other sources. Abels ex rel. Hunt v. Genie Indus. Inc., 202 S.W.3d 99, 102 (Tenn. 2006).

Many legislative enactments are remedial in nature, that is, designed to address a particular objective or purpose or to provide a degree of protection. See DeWees v. State, 390 S.W.2d 241, 242 (Tenn. 1965). Such legislation is to be "applied fairly and broadly to accomplish the ends intended." Partee v. Memphis Concrete Pipe Co., 295 S.W. 68, 69 (Tenn. 1927). Examples of remedial legislation may include fair labor standards, protections against consumer fraud, securities law, and a workers' compensation act. Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944); 3 Norman J. Singer, Statutes and Statutory Construction § 60:1 (6th ed. 2001). While a generous construction may be warranted, the interpretation of a remedial statute may not exceed reasonable bounds. Singer, supra; see, e.g., Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 364 (4th Cir. 2000). In summary, "[t]he cardinal rule of statutory construction is to effectuate

legislative intent, with all rules of construction being aides to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998).

Here, the relevant statute imposes the "duty" on "county legislative bodies . . . to provide medical attendance upon all prisoners confined in the jail in their respective counties." Tenn. Code Ann. § 41-4-115(a) (2006). Ramsey was injured in a gunfight outside a bar in Bradley County. While he was shot by an off-duty police officer who happened to be attending a birthday party there, he was not taken into custody at the scene. Instead, he was transferred to Bradley Memorial Hospital and then airlifted to Erlanger Hospital in Hamilton County. It was only after an investigation taking place over the course of several hours that an arrest warrant was issued for Ramsey at the behest of the Cleveland Police Department. While Erlanger, which had already begun medical treatment, was notified by telephone of Detective Dailey's interest in Ramsey and a "police hold" was sought, no official document followed the request. Ramsey was neither "confined" in the Bradley County Jail prior to his hospitalization nor, throughout his entire stay, placed under formal arrest by any law enforcement authority within that county. In point of fact, Ramsey left the hospital without any police restraints. Under these circumstances, the plain language of the statute does not establish any responsibility on the part of Bradley County for medical services, because Ramsey was not a "prisoner confined in the jail" when he received treatment. See Tenn. Code Ann. § 41-4-115.

We also take this opportunity to overrule Erlanger I, a prior Court of Appeals case involving the same parties and a similar issue. During the course of an arrest, a Bradley County officer shot Ricky Vincent Dunn. Dunn, accompanied by a county deputy, was airlifted to Erlanger Hospital for treatment. Dunn was under a "hold" by the Bradley County Sheriff's Department until his release, when he was taken into physical custody. While the trial court ruled that Dunn was not "confined in the jail," as specified by statute, and denied the claim by the hospital against Bradley County for medical expenses, our Court of Appeals reversed, holding that the statute, as remedial in nature, extended the meaning of "confined in the jail" to police custody:

> This legislation is clearly remedial . . . and as such is liberally construed . . . [I]n this case, it is clear that Dunn was in police custody, and he would have been arrested and taken to jail, had he not been wounded in the shoot-out with the deputy. Moreover, Dunn was on police hold while in the hospital and was picked up by the Bradley County Sheriff's Department and transported to the jail, upon being discharged from Erlanger. . . . We hold that Dunn's circumstances fall within the ambit of Tenn. Code Ann. § 41-4-115 which requires the County to provide and pay for medical services . . . .

Erlanger I, 66 S.W.3d at 891 (citations omitted).

The ruling relied in part upon our holding in Bryson, 793 S.W.2d at 255. Our opinion in Bryson addressed the responsibility of the state as to the medical expenses of prisoners in the custody of the Department of Correction. Bryson, who was on a three-day furlough from prison where he was serving an eight-year sentence, was injured in an accident involving a private vehicle on a public

highway. Tennessee Code Annotated section 41-21-204, a statute similar to that applicable to counties, governed the circumstances:

> (a) All inmates at their reception and at such times thereafter as may be deemed necessary shall be examined by a physician for the purpose of determining their status of health.

> (b) The medical director shall conduct a daily outpatient clinic. Any inmate who is ill shall receive proper medical treatment.

Tenn. Code Ann. § 41-21-204(a), (b) (2006). This Court ordered payment of the medical expenses because Bryson "remain[ed] in the custody of the State and [was] an inmate for the purpose of medical treatment." Bryson, 793 S.W.2d at 254. A concurring opinion deemed his furlough status as an extension of his confinement in prison. Id. at 256.

While our holding in Bryson is different both in fact and in law, Erlanger I is not so easily distinguishable from the circumstances here. An inmate on furlough is still an inmate. On the other hand, the term "confined in the jail," as to the enactment governing county liability, cannot extend to a patient under a police hold, formal or otherwise, even under an expansive interpretation of the statute. Thus, Erlanger I, which broadly construed the statute extending local governmental liability to those who would have been in "police custody . . . had he not been wounded in a shoot-out with [a] deputy," must be overruled. We are reluctant to view a police hold in circumstances such as these as anything more than a request by a law enforcement agency to a hospital for notification of when a patient is about to be released. Even when the hospital accedes to the request, the agreement falls short of the statutory requirements in Tennessee Code Annotated section 44-1-115.

**Conclusion**

At the time Ramsey was transported from Bradley County to Hamilton County for medical treatment, he was not "confined in the jail," a threshold requirement for obligating a county for the expense of medical care and treatment. Moreover, notification by a county law enforcement agency asking a hospital to secure a patient until the time of release from treatment does not operate to establish the liability of the county for medical expenses. Accordingly, the judgment of the Court of Appeals is reversed and the complaint is dismissed. Costs of this appeal are adjudged against Erlanger, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

-7-