IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2008 Session

**BOBBY J. BURGESS v. KONE, INC.**

**Appeal from the Circuit Court for Davidson County**
**No. 06C-797     Thomas W. Brothers, Judge**

_____

**No. M2007-02529-COA-R3-CV - Filed July 18, 2008**

_____

A state maintenance worker was injured while cleaning water out of an elevator pit in the Legislative Plaza. The worker sued the contractor that provided elevator maintenance and repair services to the state. He claimed that the contractor was responsible for his injuries because the contractor violated its contract with the state by refusing to remove the water from the elevator pit and because it was negligent in not locking down the elevator when its employee knew people would be working in the pit. The trial court granted summary judgment in favor of the contractor. The worker appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Henry S. Queener, III, Nashville, Tennessee, for the appellant, Bobby J. Burgess.

John W. Campbell, Atlanta, Georgia, and Amy D. Hampton, Nashville, Tennessee, for the appellee, Kone, Inc.

**OPINION**

The plaintiff, Bobby Burgess, is, and was at all times relevant to this case, an employee of the Tennessee Department of General Services. His job is classified as HVAC 1, which is essentially a building maintenance man for the War Memorial Complex, including the Legislative Plaza. At one end of the Legislative Plaza is a set of escalators and two elevators that lead to the Motlow Tunnel, which in turn leads either outside to Charlotte Avenue or further under the capitol to two elevators that take passengers upward into the capitol building. The two elevators in the Legislative Plaza are subject to water seepage when it rains and the water collects in the elevator pits. Sump pumps were installed at some point to address this problem.

Kone, Inc. is a company that contracted with the State of Tennessee to maintain and repair its elevators in the Legislative Plaza. A few days prior to the incident giving rise to this litigation, Roger Rollins, an employee of Kone, noticed water in the pit of one of the elevators and "let Pete [Rosenboro[1]] know that the sump pump wasn't working and he had about 3 foot [sic] of water in the pit." According to comments made during Rosenboro's deposition, Rosenboro's administrative assistant, Miss Gregg, apparently relayed Rollins's oral report of water in the pit to Haley Cousins, a facility supervisor. Rosenboro did not recall knowing about the report.

Cousins was no stranger to this problem, noting in his deposition that the maintenance staff had been in the pits "numerous times." He testified that Roger Rollins "wasn't going to work on that elevator until it got cleaned up." He passed on the information about the water in the pit to Darrell Maze and Bobby Burgess. Maze had worked in elevator pits several times, but Burgess had not. Burgess testified in his deposition that there were about 18 inches of water and 6 inches of "gunk" in the pit. He and Maze spent March 29, 2005, getting the water out of the pit and the morning of March 30, 2005, getting the "gunk" out.

The elevator had been parked one floor above.[2] No one seems to know who parked it there or what safety precautions were taken. There seems to be general agreement that the safest option, having Roger Rollins disable the elevator, was not used. Cousins and Maze stated that they would typically place an "out of order" sign on the elevator doors, flip a toggle switch in the car, and then prop open the doors with something. If the doors weren't propped open, they would close. The doors were propped with a ladder, which was used to climb into and out of the pit.

On the morning of March 30, 2005, Burgess was in the pit scooping "gunk" into a bucket and handing it up to Maze, who would then go dump it. When Maze left to dispose of some of the "gunk," Burgess took a break and climbed out of the pit. Burgess said that when Maze "started coming back," he went back into the pit. When he was reaching for his bucket and shovel, he "noticed the elevator coming – the elevator door shutting." He tried to open the doors, because "if the door don't shut, the elevator won't go." At the same time, Maze was trying to open the doors from the outside. As the elevator came down, Burgess's arm was cut and he was apparently hit on the head. The doors were opened and Burgess was pulled from the pit.[3] He was taken to a hospital and examined but was not admitted to the hospital.

Eventually, Burgess had to have rotator cuff surgery and rehabilitation. After the accident, Burgess developed high blood pressure. He also complained of feeling as if he "had the zombie head," and of frequent light-headedness. In the fall of 2006, he had a stroke which had no lasting effects. Burgess sued Kone for breach of contract and negligence. Kone moved for summary

---

[1]Mr. Rosenboro was the facility administrator.

[2]The elevator serviced two stories and was hydraulic.

[3]Cousins stated that the ladder had been crushed by the elevator. Roger Rollins said that the ladder had damaged the traveling cable by pulling out 25 of its 53 wires from the junction box.

judgment, which was granted. Burgess appeals, claiming that the summary judgment order was inadequate, that Kone breached its contractual duty, that genuine issues of material fact exist as to Kone's contractual duties and negligence, and that Kone breached its duty of care.

Standard of Review

The standard of review for a grant of summary judgment is well-established:

> The standard for review of a grant of summary judgment by the trial court is, of course, de novo. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn.2004). Because the question is one of law, no presumption of correctness attaches to the grant of a summary judgment. *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn.1996). A summary judgment, when based upon a statement of undisputed facts, pleadings, depositions, answers to interrogatories, admissions, and affidavits, is appropriate only when (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764. Further, the appellate courts "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn.1993).

*Chattanooga-Hamilton County Hosp. Auth. v. Bradley County*, 249 S.W.3d 361, 364-65 (Tenn. 2008).

Adequacy of the Summary Judgment Order

Initially, Burgess takes issue with the bare-bones nature of the order, claiming it renders this court unable to determine the basis for the trial court's judgment. No reasons are provided for the ruling; the order merely states that "the Court finds that KONE, Inc.'s Motion is due to be granted." It is the type of order this court has criticized in the past since it offers little aid in determining the basis for the trial court's decision. *See Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000). Tenn. R. Civ. P. 56.04 was amended in 2007 to alleviate this problem: "The trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's ruling." Fortunately, the basis of the trial court's ruling can be readily ascertained since the record includes a CD ROM of the hearing, including the court's ruling from the bench. Consequently, the technical problem with the order's failure to reveal the basis of the ruling does not present an insurmountable obstacle to this court's ability to understand the reasons for the trial court's ruling and to undertake appellate review.

Contractual Duty

The interpretation of a contract is a question of law and, therefore, requires a de novo review on appeal with no presumption of correctness given to the lower court's conclusions of law. *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn. 2004). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc, v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). The words of the contract should be given their usual, natural and ordinary meaning. *Galleria Assocs., L.P. v. Mogk*, 34 S.W.3d 874, 877 (Tenn. Ct. App. 2000). Further evidence of intent may be found in the practical construction of the contract as indicated by the parties' actions subsequent to its execution. *Id*.

Burgess maintains that Kone breached its contractual duty to the state to clean the elevator pit, thereby causing Burgess's injury. He points to several sections of the contract in support of his claim.

Scope of Services. The contract states: "This solicitation is for a full maintenance contract with unlimited callbacks included for work specified under monthly maintenance." This provision alone gives no indication that there is a contractual duty to clean the elevator pits.

Monthly Maintenance Requirements A.2. The contract states: "The contractor shall be responsible for furnishing all materials, tools, test equipment, labor and, repair/replacement parts, and services needed to complete all testing, inspections, and/or repairs using service technicians who shall regularly and systematically examine, test, clean, lubricate and adjust, and when conditions warrant, conduct necessary maintenance and repairs." Burgess emphasizes the obligation to "clean." In our view, however, the word is taken out of context. Words, like people, are known by the company they keep. *N. C. & St. L. Railway and L. & N. Railroad Co. v. Carroll County*, 12 Tenn. App. 380 (1930). Thus, the meaning of an unclear word in a written instrument may be ascertained by the words surrounding it.[4] *Bynum v. McDowell*, 3 Tenn. App. 340 (1926). This provision, when read as a whole, is clearly aimed at the elevator car and its attendant mechanisms. Nothing in this provision suggests that the cleaning of the elevator pit is envisioned.

Monthly Maintenance Requirements A.9. The contract states: "Elevators and escalators covered by this contract, shall be maintained in a satisfactory and safe operating condition in accordance with the requirements of these specifications and the manufacturer's original specifications." Burgess suggests that the very existence of the water in the elevator pit shows that the elevator was not being maintained in accordance with this provision. His position would make Kone responsible for any condition of the structure surrounding the elevator that could interfere with

---

[4]This principle is commonly known as *noscitur a sociis,* meaning "it is known by its associates."

-4-

the operation of the elevator. Whatever Kone did bargain for, a fair reading of the contract does not support the notion that Kone took on such responsibility.

Monthly Maintenance Requirements A.13. The contract states: "The contractor shall regularly & systematically examine, adjust, clean, lubricate, furnish proper lubricants and hydraulic oil, and when conditions warrant, repair or replace parts for the following according to specified intervals: . . . Hydraulic elevators . . . clean pit bi-monthly." This is the only mention of any responsibility for Kone to clean the hydraulic elevator pits. It is designated to be done bi-monthly. The contract is silent as to what is to be done by Kone when cleaning the pit. This is where the parties' course of conduct sheds light upon their intent.

Rosenboro, the facility administrator, maintained that "under no circumstances do we work in pits, . . . ." He did, however, note that, "If it was a sump pump issue, we probably would have took [sic] care of it." The state would contract out projects such as painting the pits or attempting to seal the pits so that water would not enter. Cousins said that state workers were not supposed to work on the elevators themselves, but "we had all been in the pits to get water out when the sump pump wasn't working." State workers had been asked on several occasions to clean out the pits when they filled with water; Cousins stated that "we've done it a lot." They also went into the pits to retrieve items such as car keys when people dropped them through the crack between the elevator and the shaft. Rollins indicated that on prior occasions his supervisor told him to let the building management know there was water in the pits so they could take care of it. He testified it was the responsibility of "the building" to get the water out of the pit.

It appears that the parties placed a practical construction on the contract that Kone handled mechanical issues and the state or other contractors handled other physical and structural issues relating to the elevator shafts. Thus, the state was responsible for removing water from the elevator pits. This interpretation is consistent with the actions the state's employees took leading up to Burgess's injury.

We are not aware of any genuine issues of material fact as to the duty of Kone under the contract to clean water from the elevator pits. In light of the contract's provisions and the parties' course of dealing, we find that Kone did not violate the contract with the state of Tennessee [5] and affirm the trial court's ruling in this regard.

---

[5]This conclusion renders it unnecessary for us to address Burgesses' third party beneficiary argument.

Negligence

The elements that must be proved to establish a claim for negligence are "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005). Burgess claims that summary judgment is inappropriate because genuine issues of material fact exist as to Kone's negligence. He further states that "[t]he existence of the duty upon the Defendant via Roger Rollins to shut down the elevator and the breach of said duty is a classic contest of testimony to be weighted by the trier of fact . . . ." This is not an accurate statement of the law. Whether a particular person owed another person a duty of care is a question of law, which this court reviews de novo. *Draper v. Westerfield*, 181 S.W.3d 283, 291 (Tenn. 2005)(citing *Biscan*, 160 S.W.3d at 478).

In searching for a duty, courts have looked at action and at inaction. As to action, the Tennessee Supreme Court has said that a "'risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed *by defendant's conduct* outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.'" *Staples v. CBL & Assocs., Inc*., 15 S.W.3d 83, 89 (Tenn. 2000) (quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995)) (emphasis added). In this case, as the trial court observed, there is no evidence that Rollins, acting on behalf of Kone, did anything to create the dangerous situation that gave rise to Burgess's injury.

As to inaction, persons "do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own." *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App.1992). The exception to this rule arises "'when certain socially recognized relations exist which constitute the basis for such legal duty.'" *Id*. at 661 (quoting Fowler V. Harper and Posey M. Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 887 (1934)). No such relationship exists between Kone and Burgess. Kone was an independent contractor who had no contractual duty to undertake the activity which state employee Burgess had been instructed by his superiors to perform. So, even if Rollins, Kone's employee, knew that state employees would be cleaning out the elevator pit, Kone was under no legal duty to take any action to make their work safer.[6]

---

[6]Sometimes moral and legal duties diverge. As the Court of Appeals of New York has said:

> In holding that there is no duty here, it must be stressed that not all relationships give rise to a duty. One should not be held legally responsible for the conduct of others merely because they are within our sight or environs. Neither should one be answerable merely because there are others whose activities are such as to cause one to envision damages or injuries as a consequence of those activities. In this respect, a moral duty should also be distinguished from a legal duty. The former is defined by the limits of conscience; the latter by the limits of law. A person may have a moral duty to prevent injury to another, but no legal duty.

(continued...)

"The essential inquiry in any negligence case is whether the particular defendant is under a legally recognized duty to a particular plaintiff." *Id*. at 662. Since we find that Kone had no legal duty to Burgess, we affirm the summary judgment on the negligence claim.

Costs of appeal are assessed against Appellant Bobby Burgess, for which execution may issue if necessary.

ANDY D. BENNETT, JUDGE

---

[6] (...continued)
*Pulka v. Edelman*, 358 N.E.2d 1019, 1022 (N.Y. 1976).