# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 13, 2014

## STANLEY WALKER v. BRADLEY COUNTY GOVERNMENT, ET AL.

### Appeal from the Circuit Court for Bradley County
### No. V11580      J. Michael Sharp, Judge

_____

### No. E2013-01053-COA-R3-CV-FILED-APRIL 15, 2014

_____

This appeal arises out of an inmate's allegedly improper early release from jail. Stanley Walker ("Walker"), alleging that he was improperly released early from jail because the authorities did not want to pay for his medical care, sued Bradley County and Capt. Gabriel Thomas ("the Defendants") in the Circuit Court for Bradley County ("the Trial Court"). The Trial Court dismissed certain of Walker's claims for failure to state a claim and ultimately granted summary judgment for the Defendants on the remaining claim. Walker timely appealed. We hold, *inter alia*, that Walker has no private right of action for being released early from jail, and we affirm the judgment of the Trial Court in its entirety.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

John M. Wolfe, Jr., Chattanooga, Tennessee, for the appellant, Stanley Walker.

Thomas E. LeQuire and Michael A. Kent, Chattanooga, Tennessee, for the appellees, Bradley County, Tennessee and Capt. Gabriel Thomas.

# OPINION

## Background

This case was disposed of below on a motion to strike and dismiss and a motion for summary judgment. We draw on Walker's complaint for background facts sufficient to resolve this appeal.

In 2009, Walker was on probation for driving on a suspended license. On April 28, 2009, Walker went to his probation office. The probation officer determined that Walker had not complied with the terms of his probation. Walker was taken into custody. On May 8, 2009, Walker appeared in court and was sentenced to 30 days in jail, starting April 28, "to be counted day for day. . . ."

On May 20, 2009[1], Walker reported a medical condition to jail medical staff. Walker was diagnosed with a staph infection. The medical staff advised isolating Walker, which was done. According to Walker's complaint, a Lieutenant Joleen Hickman wrote a memo which cited the expense that further treatment of Walker's condition would require. After reading Lt. Hickman's memo, Captain Gabe Thomas, allegedly without the legal authority to do so, ordered Walker released before his sentence was completed. Walker was released on May 22, 2009. By Walker's account, he "walked out of the jail on his own power."

Walker alleged that he sought medical treatment at a hospital after his release from jail. In August 2011, Walker sued the Defendants, alleging, among other things, that he was improperly released early from jail because the Defendants did not want to pay for his medical expenses. According to Walker, he contracted a staph infection while in jail and the Defendants ought to pay for his related medical expenses and other damages.

The Defendants filed a motion to strike and dismiss those of Walker's claims rooted in his contention that he improperly was released early from jail. In February 2012, the Trial Court entered an order dismissing all of Walker's claims arising from his early release. The Trial Court stated: "[T]he court finds that the facts as alleged in this complaint do not state a claim upon which relief can be granted, in that an inmate does not have an absolute right not to be released from custody." The Trial Court also held that there was no basis to award Walker any attorney's fees. The Trial Court reserved Walker's negligence claim against the Defendants.

---

[1]Walker states 2011 in his complaint, but this appears to merely be a mistake.

The Defendants then filed a motion for summary judgment regarding Walker's Governmental Tort Liability Act negligence claim. In December 2012, the Trial Court granted the Defendants' motion for summary judgment. The Trial Court stated in part:

> The court finds that the only remaining claim of plaintiff's complaint is a negligence claim, and based upon the above, the plaintiff does not have the necessary proof concerning the duty of the defendants under the circumstances, and whether any duty was breached or whether any employee of the defendant was negligent. The plaintiff's only expert offer in response to the defendants' motion for summary judgment simply states that while being incarcerated does significantly raise the risk of contracting MRSA, the plaintiff's expert opined that he could not identify the precise mechanisms that caused or activated the MRSA. The court finds that the affidavit of Dr. Steven Perlaky fails to create an issue of material fact as to either the standard of care or proximate causation. Therefore, the court finds that summary judgment in favor of the defendants is appropriate and grants the defendants' motion. This is a final order.

Walker filed a motion to alter or amend the judgment which the Trial Court denied. Walker then filed a timely appeal to this Court.

## Discussion

Although not stated exactly as such, Walker raises five issues on appeal: 1) whether, based on the separation of powers doctrine, the Trial Court erred in dismissing Walker's claims related to his alleged early release; 2) whether the Trial Court erred in dismissing Walker's claim for attorney's fees; 3) whether the Trial Court erred in declining to find an obligation for Bradley County to pay Walker's medical expenses; 4) whether the Trial Court erred in declining to promulgate a uniform rule for assigning re-filed cases in circuit courts; and, 5) whether the Trial Court erred by declining to apply the doctrine of *res ipsa loquitur* to Walker's negligence claim.

As noted above, the claims in this case were disposed of through a motion to strike and dismiss, in part, and a motion for summary judgment, in part. Our Supreme Court has articulated the standard for motions to dismiss:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss " 'admits the truth

of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.' "

In considering a motion to dismiss, courts " 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.' " A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations omitted).

Walker's GTLA negligence claim was disposed of by means of summary judgment. With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[2] That statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

---

[2]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

-4-

> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[3]

*Estate of Boote v. Roberts*, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at **8-9 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes in original but renumbered).

We first address whether, based on the separation of powers doctrine, the Trial Court erred in dismissing for failure to state a claim Walker's claims related to his alleged early release. Walker argues that in this case the jailer acted like a judge and thereby violated the separation of powers doctrine. Our Supreme Court has discussed the separation of powers doctrine:

Article II, § 1 of the Tennessee Constitution provides:

> The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

Article II, § 2 provides:

> No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.

The separation of powers doctrine arises from the precept that "[i]t is essential to the maintenance of republican government that the action of the legislative,

---

[3]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

judicial, and executive departments should be kept separate and distinct."
*Richardson v. Young*, 122 Tenn. 471, 492, 125 S.W. 664, 668 (1910).  The
Court of Appeals has summarized the doctrine as follows:

> In general, the "legislative power" is the authority to make,
> order, and repeal law; the "executive power" is the authority to
> administer and enforce the law; and the "judicial power" is the
> authority to interpret and apply law.  The Tennessee
> constitutional provision prevents an encroachment by any of the
> departments upon the powers, functions and prerogatives of the
> others.  The branches of government, however, are guided by
> the doctrine of checks and balances; the doctrine of separation
> of powers is not absolute.

*State v. Brackett*, 869 S.W.2d 936, 939 (Tenn. Crim. App. 1993) (citations
omitted).  Thus, while the three branches of government are independent and
co-equal, they are to a degree interdependent as well, with the functions of one
branch often overlapping that of another. *Underwood v. State*, 529 S.W.2d 45,
47 (Tenn. 1975).  "[B]ecause the defining powers of each department are not
always readily identified, recognizing an encroachment by one department
upon another is sometimes difficult." *Summers v. Thompson*, 764 S.W.2d 182,
189 (Tenn.)(Drowota, J., concurring) *cert. dismissed*, 488 U.S. 977, 109 S.Ct.
524, 102 L.Ed.2d 556 (1988).

*State v. King*, 973 S.W.2d 586, 588-89 (Tenn. 1998).


        Walker is correct in that the three branches of Tennessee's government are
separate, co-equal, and independent.  However, the issue actually presented here is whether
there is a private right of action for improperly being released early from custody before
one's sentence has been completed.  Our answer to this question is no.  Walker has pointed
to no authority recognizing any such right of action.  Our own research has yielded no
authority for such a proposition.  We are of the view that Walker did not suffer a legally
redressable injury when, and if, he was freed before his sentence was completed.

        Our decision on this issue does not mean non-judicial officials may make their
own decisions regarding sentence length.  Absent some statutory authority to do so,
non-judicial officials may not unilaterally decide to shorten validly court-entered sentences.
Also, nothing in our Opinion should be construed to suggest that there is no recourse when
a non-judicial official unilaterally releases an inmate early.  We hold only that, whatever
other recourse is available when a non-judicial official improperly releases an inmate before

the inmate's sentence is completed, the prematurely released inmate lacks standing and, therefore, is not the proper party to bring an action to address the improper early release because it is no injury to the inmate simply to be freed from jail early.

We next address whether the Trial Court erred in dismissing Walker's claim for attorney's fees. Walker argues that he should be awarded attorney's fees on the theory that his improper early release overrode a judicial order, that this arguably constituted contempt of court, and that attorney's fees are a proper remedy for contempt. However, no such contempt has been established, and that resolves this issue. We find no basis for awarding Walker attorney's fees in this case. The Trial Court did not err in declining to award Walker attorney's fees.

We next address whether the Trial Court erred in declining to find an obligation for Bradley County to pay Walker's medical expenses. Our Supreme Court addressed the obligation to provide medical care for inmates in *Chattanooga-Hamilton County Hosp. Auth. v. Bradley County,* 249 S.W.3d 361 (Tenn. 2008). Our Supreme Court stated:

> Here, the relevant statute imposes the "duty" on "county legislative bodies . . . to provide medical attendance upon all prisoners confined in the jail in their respective counties." Tenn. Code Ann. § 41-4-115(a) (2006). Ramsey was injured in a gunfight outside a bar in Bradley County. While he was shot by an off-duty police officer who happened to be attending a birthday party there, he was not taken into custody at the scene. Instead, he was transferred to Bradley Memorial Hospital and then airlifted to Erlanger Hospital in Hamilton County. It was only after an investigation taking place over the course of several hours that an arrest warrant was issued for Ramsey at the behest of the Cleveland Police Department. While Erlanger, which had already begun medical treatment, was notified by telephone of Detective Dailey's interest in Ramsey and a "police hold" was sought, no official document followed the request. Ramsey was neither "confined" in the Bradley County Jail prior to his hospitalization nor, throughout his entire stay, placed under formal arrest by any law enforcement authority within that county. In point of fact, Ramsey left the hospital without any police restraints. Under these circumstances, the plain language of the statute does not establish any responsibility on the part of Bradley County for medical services, because Ramsey was not a "prisoner confined in the jail" when he received treatment. *See* Tenn. Code Ann. § 41-4-115.

*Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 366-67.

Walker's argument is without merit. Walker was not confined in jail when he received his medical treatment. Walker was not prevented by the Defendants from seeking medical care. Indeed, by his own account, Walker freely walked out of jail and obtained medical care. Just as Walker had no right to be fed or housed outside of jail by the authorities upon his release, Walker had no absolute right to remain in jail in order to receive medical care paid for by Bradley County.[4] The Trial Court did not err in dismissing all of Walker's claims arising from his early release from jail.

We next address whether the Trial Court erred in declining to promulgate a uniform rule for assigning re-filed cases in circuit courts. We observe initially that Walker fails to articulate how the Trial Court's following its current policy and practice constitutes error by the Trial Court in this case. According to Walker, "[r]efiled cases should automatically return to the court to which the clerk originally assigned them." In its order granting summary judgment to the Defendants, the Trial Court stated on this issue: "This court finds that this is in fact a new lawsuit filed in the Circuit Court of Bradley County and assigned to a judge, using the same random assignment method that all cases are assigned by to one or the other Circuit judges." We hold that the Trial Court did not err in declining to alter its system used for assigning cases to judges.

The final issue we address is whether the Trial Court erred by declining to apply the doctrine of *res ipsa loquitur* to Walker's negligence claim. Regarding *res ipsa*, we have stated: "[T]he application of *res ipsa loquitur* doctrine . . . requires a demonstration by the plaintiff that, among other things, the injury was one which ordinarily does not occur in the absence of negligence." *Cannon v. McKendree Village, Inc.*, 295 S.W.3d 278, 285 (Tenn. Ct. App. 2008).

Walker argues that the Trial Court's order on summary judgment was incomplete in that it failed to address the *res ipsa* issue. We note, however, that Walker did not rely on *res ipsa loquitur* in his complaint. In any event, the Trial Court did refer to the case of *Thompson v. Methodist Hosp.*, 367 S.W.2d 134 (Tenn. 1962), a case broaching *res ipsa* where our Supreme Court held that, even if the plaintiff contracted his infection at the hospital, no evidence had been adduced that the infection had been caused by the hospital's

---

[4]We are aware of the case of *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612 (6th Cir. 2010), wherein a prisoner brought a § 1983 action related to his wife's suicide after she was released on bond from a mental facility. The Sixth Circuit ruled that the prisoner sufficiently stated a claim against the county defendants for violating his wife's Eighth and Fourteenth Amendment rights. *Id.* at 617-18. There are critical differences with the instant case. There is no hint that Walker was denied the requisite treatment for his staph infection. The issue appears to be about who should pay for the treatment. Also, it bears pointing out that there is no constitutional requirement that prisoners receive their medical care completely free of cost. *See Holmes v. Howard*, No. 06-1041, 2007 WL 505360, at *6 (W.D. Ark. Feb. 14, 2007).

negligence. In the instant case, Walker failed to establish the elements of negligence. The affidavit introduced by Walker merely established there was a higher risk of MRSA in jails, not that any act of the Defendants specifically precipitated Walker's infection or that his "injury was one which ordinarily does not occur in the absence of negligence." *Cannon*, 295 S.W.3d at 285. There was no genuine issue of material fact, and the Defendants were entitled to judgment as a matter of law as comprehensively addressed by the Trial Court in its order on summary judgment. We affirm the judgment of the Trial Court on this and on all issues on appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Stanley Walker, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE