# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 23, 2015 Session

## EWIN B. JENKINS ET AL. v. BIG CITY REMODELING ET AL.

### Appeal from the Circuit Court for Sevier County
### No. 13-CV-296-IV      O. Duane Slone, Judge

---

### No. E2014-01612-COA-R3-CV-FILED-SEPTEMBER 29, 2015

---

The plaintiffs filed this action to recover damages they incurred when, during construction, their home was completely destroyed by fire. The plaintiffs sued the project's general contractor as well as various subcontractors employed by the general contractor. The complaint included allegations of negligence, based in part on the doctrine of *res ipsa loquitur*, and breach of contract. The trial court granted summary judgment in favor of all defendants. The plaintiffs have appealed. We affirm the trial court's grant of summary judgment to the general contractor regarding claims based upon the general contractor's own negligence and *res ipsa loquitur*, but we reverse the trial court's grant of summary judgment regarding the negligence of the flooring subcontractors. We also reverse the trial court's grant of summary judgment in favor of the general contractor regarding the plaintiffs' breach of contract claim. Finally, we remand the case to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. CHARLES D. SUSANO, JR., C.J., filed a separate concurring and dissenting opinion.

Arthur G. Seymour, Jr., and Matthew A. Grossman, Knoxville, Tennessee, for the appellants, Ewin B. Jenkins and Janet Jenkins.

Ellis A. Sharp and Justin D. Roddye, Knoxville, Tennessee, for the appellee, Big City Remodeling.

Clinton J. Woodfin, Knoxville, Tennessee, for the appellees, Henson & Associates Flooring, Inc., and Julian Luu d/b/a Quality Hardwood Floors.

**OPINION**

## I. Factual and Procedural Background

On October 28, 2011, Ewin B. Jenkins and Janet Jenkins ("Owners"), contracted with general contractor Elick Combs, doing business as Big City Remodeling, for the construction of a home in Sevier County, Tennessee. Construction commenced and was near completion when the home caught fire and was engulfed on October 31, 2012. The fire resulted in the total loss of the home except for the foundation. On May 7, 2013, Owners filed a complaint against numerous entities involved with the construction, including, *inter alia*, Big City Remodeling ("Builder"), and flooring subcontractors, Henson & Associates Flooring, Inc., and Julian Luu, doing business as Quality Hardwood Floors (collectively, "Flooring Subcontractors"). The complaint included allegations in support of claims of negligence and breach of contract. Due to the uncertain circumstances surrounding the origin of the fire, Owners relied in part on the doctrine of *res ipsa loquitur* to establish their negligence claim.

The constructed dwelling, consisting of approximately 6487 gross square feet, included an attached garage and an exterior deck, which structures were located in close proximity to one another. A steep incline was located behind the house. Two video surveillance cameras positioned on a neighbor's adjoining property recorded footage of activity in portions of the home's backyard. At the time of the fire, one of the few remaining construction tasks was the staining of the wood floors throughout the home.

Sometime prior to the fire loss, Owners had begun moving their personal property into the home. To facilitate the process, Owners possessed a key for access. Although Owners had visited the home the day before the fire, they were out of state on the day of the catastrophe. Various subcontractors had been working at the home on the date of the fire, including Julian Luu, who was finishing the staining of the hardwood floors. Mr. Luu completed his work and was the last to leave the property at roughly 6:10 p.m. According to the video surveillance footage, the fire began at 7:50 p.m. The back door of the garage was subsequently blown off by an explosion at 7:58 p.m.

Initially, Owners averred that the conflagration was caused by flammable materials left on the property. According to their allegations, an ignition source left by one or more defendants in the vicinity of flammable materials caused the blaze. Propane gas, which Owners claimed was improperly fitted to the fireplace, was believed to have caused the explosion.

2

As discovery ensued, Owners asserted that Flooring Subcontractors allowed flammable rags to remain on or near the exterior deck and also smoked cigarettes in the area. As claimed by Owners, the improper disposal of cigarette butts resulted in the stain-soaked rags igniting, thereby causing the fire. Deposition testimony revealed that numerous workmen, including Mr. Luu, smoked cigarettes repeatedly on the job site and that problems had arisen from the improper disposal of cigarette butts prior to the time of the fire. Several witnesses testified that they often observed the workmen smoking in the backyard. Although no work rags survived the fire, testimony from Owners' expert witness indicated that buckets containing staining rags and cigarette butts had been improperly placed in a dumpster on the property and were discovered by him sometime following the fire.

No conclusive evidence was presented as to the origin of the fire. David Fultz, an expert witness for Owners, testified that although he believed the fire began on the exterior deck, he could not be certain of its origin. Mr. Fultz further opined that the cause of the conflagration was the combustion of improperly discarded staining rags, which could have spontaneously combusted or could have been ignited by a cigarette butt. While he admitted that he was unable to completely rule out arson or a problem with electrical wiring as causes of the inferno, he indicated finding no evidence of either. The existence of propane, however, was eventually ruled out as an initial cause. Consequently, the trial court granted summary judgment in favor of Amerigas Propane and Pro-Tech Heating and Cooling, which were dismissed as parties from the suit.

On May 7, 2014, Builder filed a motion for partial summary judgment, positing that Owners could not rely upon the doctrine of *res ipsa loquitur*. Specifically, Builder maintained that Owners were unable to establish the exclusive control element of their *res ipsa loquitur* claim. Builder also averred that Owners could not recover under a breach of contract claim because they had first materially breached the construction contract by failing to procure "all risk" insurance. In response, Owners acknowledged that while they did not purchase insurance as required by the contract, such failure was not a material breach barring their action against Builder. Flooring Subcontractors likewise filed a joint motion for summary judgment on June 13, 2014. Subsequently, Builder filed a motion for summary judgment regarding the remaining claim of negligence, thereby seeking dismissal of all claims against it.

Following oral arguments, the trial court granted all motions for summary judgment. In granting Builder's motion for partial summary judgment, the trial court stated in pertinent part:

[T]he plaintiffs cannot demonstrate that they were injured by an

3

instrumentality that was within the exclusive control of this defendant, and that no proof exists in the record as to the cause of the fire. Defendant Combs' motion for partial summary judgment requesting that the Court find that the doctrine of *res ipsa loquitur* does not apply to the facts of this case is well taken. Additionally, the Court holds that a valid contract . . . existed between these parties. The Court finds, as a matter of law, the claim of breach of contract . . . is barred due to a material breach of said contract by the plaintiffs as evidenced by their failure to obtain Builder's Risk insurance as required by the contract.

With reference to the negligence claim presented, the trial court's basis for granting Builder's motion for summary judgment was virtually identical. Regarding the Flooring Subcontractor's motion for summary judgment, the trial court explained:

With regard to the motion for summary judgment by Henson and Luu, the Court finds as a matter of law that no genuine issues of material fact exist with regard to the allegations of negligence on the part of these defendants. Specifically, with regard to these defendants, the plaintiffs are relying exclusively on the doctrine of *res ipsa loquitur* to allow for an inference of negligence, and the Court finds as a matter of law that based on the record before the Court, including the statements of counsel for the plaintiffs, that the plaintiffs cannot demonstrate that they were injured by an instrumentality that was within the exclusive control of these defendants. The Court further finds that no proof exists in the record as to the cause of the fire.

Owners timely appealed.

## II. Issues Presented

Owners present the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in holding that the doctrine of *res ipsa loquitur* did not apply to establish negligence on the part of Builder.

2. Whether the trial court erred in granting summary judgment in favor of Flooring Subcontractors on the claim of negligence.

4

3. Whether the trial court erred in granting summary judgment in favor of Builder by determining that Owners materially breached the contract through failing to purchase insurance pursuant to the contract requirements.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of appellate review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2014) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n. 2 (Tenn. 2011). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> >
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[1] The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law."

---

[1] As this Court has explained:

> Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

*Dick Broad. Co.*, 395 S.W.3d at 671 (citing Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. *Res Ipsa Loquitur*

Owners contend that the trial court erred in determining that *res ipsa loquitur* was inapplicable in this action. Causes of action typically involving application of the doctrine of *res ipsa loquitur* are ones in which "the injury was probably the result of negligence, even though the exact nature of the negligence is unknown, and . . . it was probably the defendant who was the negligent person." *Burton v. Warren Farmer's Co-op*, 129 S.W.3d 513, 523 (Tenn. Ct. App. 2002) (citing 1 Dan B. Dobbs, The Law of Torts § 154, at 371 (2001); *see also Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. Ct. App. 1998); *Boykin v. Chase Bottling Works*, 222 S.W.2d 889, 895 (Tenn. Ct. App. 1949). Plaintiffs must establish three elements in order to proceed under the doctrine of *res ipsa loquitur*: (1) there is a "thing" that caused the injury; (2) the "thing" that caused the injury was under the exclusive control of the defendant at the time the injury occurred; and (3) the "thing" was of such a nature to not occur without negligence. *Armes by Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992). Further, Plaintiffs must establish that "a reasonable person [could] infer, with at least reasonable probability, that the [defendant] was responsible for <u>all</u> the probable causes of the damage . . . ." *Burton*, 129 S.W.3d at 527 (emphasis added).

The doctrine of *res ipsa loquitur* does not apply, however, in situations "where the plaintiff's injury could reasonably have occurred even without the defendant's negligence." *Underwood*, 892 S.W.2d at 427. Further, as this Court has elucidated:

> The inferences permitted by the res ipsa loquitur doctrine are rebuttable. Most commonly, defendants rebut these inferences by proving (1) that they exercised reasonable care under the circumstances, (2) that the plaintiff's injury was caused by something over which they had no control, (3) that the plaintiff's injury was the sort of injury that commonly occurs without anyone's negligence, or (4) that the plaintiff's injury could not have been avoided even with the exercise of reasonable care. *Summit Hill Assocs. v. Knoxville Utils. Bd.,* 667 S.W.2d at 96; *Swiney v. Malone Freight Lines,* 545 S.W.2d at 116. It is the fact-finder's prerogative to weigh the evidence to determine whether the defendant has successfully rebutted the

inferences arising from the plaintiff's evidence. *Casenburg v. Lewis,* 163 Tenn. 163, 167, 40 S.W.2d 1038, 1039 (1931); *Kidd v. Dunn,* 499 S.W.2d 898, 899–900 (Tenn. Ct. App. 1973).

*Burton*, 129 S.W.3d at 527-28.

In the case at bar, the trial court concluded that Owners could not rely on the doctrine of *res ipsa loquitur* to establish negligence by Builder because the requirement of exclusive control was absent. In *Burton*, this Court explained the parameters of the exclusive control element as follows:

> The "exclusive control" element of the *res ipsa loquitur* doctrine, if read too literally, is overly restrictive. *Res ipsa loquitur* cannot be applied unless the circumstances surrounding the injury indicate that the causal negligence was probably the defendant's, not that of another person. Evidence that the plaintiff was injured by an instrumentality that was in the defendant's exclusive control at the time is sufficient for this purpose. However, proving a defendant's exclusive control of an instrumentality when an injury occurs is not the only way to demonstrate the defendant's responsibility for the injury. Tennessee's courts, like their counterparts in other states, have approved the application of *res ipsa loquitur* in cases involving foreign objects in sealed containers and exploding soft drink bottles where the defendant could not be said to have been in "exclusive control" of the injury-causing instrumentality when the injury occurred. These cases indicate that Tennessee's courts do not view "exclusive control" as indispensable to the application of the *res ipsa loquitur* doctrine. The Tennessee Supreme Court, quoting Restatement (Second) of Torts § 328 D, cmt. g with approval, points out:
>
> > Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a *res ipsa loquitur* case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.

*Burton*, 129 S.W.3d at 525 (internal citations omitted). As explained in *Boykin*, it is sufficient if the defendant had exclusive control of the instrumentality when the act causing the injury occurred, so long as that condition was not changed after the instrumentality left the defendants' possession. *See* 222 S.W.2d at 526. The *Burton* Court appropriately commented that "[e]ven though there is beyond all reasonable doubt

7

'negligence in the air,' the plaintiff must still bring the negligence home to the defendant." *Burton*, 129 S.W.3d at 524.

Our review necessarily focuses upon the contract provisions addressing control over the construction. Owners argue that Builder contractually agreed that it had exclusive control of the property. The contract states in pertinent part:

> **<u>CONTRACTOR'S RESPONSIBILITY</u>:** It is hereby understood that the Contractor shall fully execute the work described in the Contract Agreement, to include exceptions & specifications indicated herein, and to erect the home according to approved drawings provided by Big City Remodeling. The Contractor shall select qualified subcontractors for portions of the work and shall make payment to them directly upon completion of inspected work, this Contract includes labor, materials, equipment and systems to complete home (turn-key). A portable toilet shall be provided for workers at the Contractor's expense.
>
> The Contractor shall supervise and direct the work, using his best skills and attention. <u>He shall have full control over construction means, methods, techniques, sequences or procedures, as well as job safety.</u>

(Emphasis added.) Owners also emphasize that during his deposition, Mr. Combs stated that he was in control of the job site at the time of the fire.

Builder maintains that at the time of the fire or the act that caused the fire, there were numerous parties, including Owners, having access to the home and attached deck. Further, public access to the premises and arson could not be ruled out for purposes of causation. During the hearing, the trial court noted that the origin of the fire was outside the interior of the home. The court further determined that even had the fire originated inside, the home was not within the exclusive control of Builder. We agree.

The evidence presented suggests that the fire began on the attached rear deck of the home. On the day of the fire, various workmen had been present. One day prior to the calamitous event, Owners had also visited the home in order to inspect certain work that had been completed. Further, while no evidence was presented to support arson, Owners' expert could not exclude arson as a cause of the fire, in part because the fire occurred on Halloween. The deck included an exterior staircase, making public access possible for anyone within the vicinity. Moreover, the property was unfenced. Video surveillance from a neighbor's camera failed to show any visitors present during or immediately preceding the conflagration, but the evidence also demonstrated that one could access the site without being seen in the camera footage.

Following our thorough review of the record, we conclude that Builder did not have exclusive control of the construction site at the time of the act causing the fire. Because the evidence regarding the origin of the fire is inconclusive and multiple parties could have accessed the area and caused the fire, the Builder cannot be held liable under the doctrine of *res ipsa loquitur*. As previously explained, to rely on *res ipsa loquitur*, Owners would have to establish that Builder was responsible for or in control of all possible causes of the fire. *See Burton*, 129 S.W.3d at 527-28. In the case at bar, the premises were not within Builder's exclusive control but rather were accessible by other parties, including the general public. As such, application of the doctrine of *res ipsa loquitur* is precluded. *See, e.g., Olswanger v. Funk*, 470 S.W.2d 13, 16 (Tenn. Ct. App. 1970) (holding that where the plaintiff proved that his apartment building sustained damage by fire that originated in a couch located in an apartment rented by the defendants, and over which the defendants had exclusive control because the apartment was locked, *res ipsa loquitur* would apply).

A review of the pertinent contractual provisions further supports the trial court's determination of the non-applicability of *res ipsa loquitur*. The language of the above-quoted contractual provision does not establish Builder's exclusive control as an element of the doctrine of *res ipsa loquitur*. Regarding the proper construction of a contract, our Supreme Court has elucidated:

> The interpretation of written agreements, like the lease at issue, is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law. *See Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999); *Union Planters Nat'l Bank v. Am. Home Assurance Co.,* 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889–90 (Tenn. 2002). This Court's initial task in construing the lease at issue is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

In the instant action, the contractual provision at issue states in pertinent part that Builder "shall supervise and direct the work, using his best skills and attention. He shall have full control over construction means, methods, techniques, sequences or procedures, as well as job safety." A reasonable interpretation of this provision is that Builder maintains control over the methods of construction utilized in completing the work. This provision was clearly not intended, however, to assign Builder complete control of the interior and exterior portions of the premises. The unrefuted proof demonstrated that Owners enjoyed unhindered access to the home's interior, as did numerous workmen and subcontractors. The exterior components were also accessible by the general public. We determine that the above-quoted contractual provision does not establish Builder's exclusive control as an element of the doctrine of *res ipsa loquitur*. For these reasons, we affirm the trial court's grant of summary judgment in favor of Builder on this issue.

## V. Negligence of Flooring Subcontractors

The trial court determined that Owners relied solely on the application of *res ipsa loquitur* in their negligence claims against Flooring Subcontractors and were barred due to Flooring Subcontractors' lack of exclusive control. Although we agree that Owners could not rely upon the doctrine of *res ipsa loquitur* to establish their negligence claims against Flooring Subcontractors, the trial court was nevertheless required to determine whether a grant of summary judgment was appropriate regarding the issue of negligence by Flooring Subcontractors. Owners maintain that the court erred in dismissing their claims against Flooring Subcontractors because the circumstantial evidence related to the cause of the fire was sufficient to withstand the Flooring Subcontractor's motion for summary judgment. We agree.

In the complaint, Owners alleged certain facts regarding Flooring Subcontractors, including that Mr. Luu was the last person on the premises before the fire began. Moreover, he had been working with flammable materials during the day. Mr. Luu admitted that he left the construction site between 5:15 and 5:30 p.m., although Mr. Combs stated that the video footage established Mr. Luu's time of departure to be 6:10 p.m. Owners further alleged that the cause of the fire was an ignition source left near flammable materials. Evidence demonstrated that Mr. Luu and his crew had smoked near the garage and in the vicinity of the exterior deck on prior occasions. In addition, Owners' expert witness testified that the spontaneous combustion of flammable rags could have caused the fire. The expert also opined that the fire started on the exterior deck. Although no flammable rags survived the fire, buckets containing stain-soaked rags used by Flooring Subcontractors were found to have been improperly placed in a dumpster on the property.

In order to establish a negligence claim, Owners must prove that there was a duty

owed by Flooring Subcontractors, a breach of that duty, causation, proximate cause, and resultant damages. *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 259 (Tenn. 2010) (citing Tenn. Code Ann. § 29-26-115 (Supp. 2009)). This Court has stated that even in negligence cases where the doctrine of *res ipsa loquitur* does not apply, plaintiffs may utilize circumstantial evidence to meet their burden of proof. *Merriman v. Coca Cola Bottling Co. of McMinnville, Tenn.*, 68 S.W.2d 149, 153 (Tenn. Ct. App. 1933) (quoting *Yates v. Coca Cola Bottling Works*, 14 Tenn. App. 7, 1931 WL 1568, at *3 (Tenn. Ct. App. July 2, 1931)).

Flooring Subcontractors argue that Owners have presented insufficient evidence to establish the element of causation with regard to their negligence claim. In support, Flooring Subcontractors point to numerous potential causes of the fire and suggest that there was no evidence of any flammable rags remaining on the site or even a possible ignition source. Owners' own expert testified that he could not conclusively determine the origin of the fire and that he also could not exclude arson. Owners argue, however, that genuine issues of material fact exist precluding summary judgment. We agree with Owners regarding this issue.

Following the enactment of Tennessee Code Annotated § 20-16-101, Tennessee now follows the burden-shifting analysis employed by federal courts with regard to a summary judgment motion. *See, e.g., Hannan*, 270 S.W.3d at 5; *Walker*, 2014 WL 1493193 at *3 n.3. As previously noted, the statute was intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *See Walker*, 2014 WL 1493193 at *3 n.3 (quoting *Coleman v. S. Tenn. Oil, Inc.*, 2012 WL 2628617 at *5 n.3). This "put up or shut up" standard, as set forth in the new summary judgment statute, is as follows:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> . . .
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

Pursuant to Tennessee Rule of Civil Procedure 56.04, "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Dick Broad. Co.*, 395 S.W.3d at 671. "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008) (quoting *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.*

In the instant action, Flooring Subcontractors filed a motion for summary judgment asserting that Owners could not show that any alleged conduct of Flooring Subcontractors was the cause in fact of Owners' damages. Ergo, Flooring Subcontractors alleged that Owners' evidence was insufficient to establish an essential element of their negligence claim. Owners responded by filing a statement of material facts precluding summary judgment, with attached deposition excerpts. Following our thorough review of the submitted documentation, we determine that there are disputes of material fact regarding whether Flooring Subcontractors acted negligently and whether that negligence was the cause of the fire. We further determine that a reasonable jury could resolve this issue in favor of either party.

Viewing the evidence presented in the light most favorable to Owners, the proof demonstrated that Flooring Subcontractors often disposed of cigarette butts on the ground surrounding the home. They, in fact, had been asked by Builder to smoke in a different area. The proof also showed that Mr. Luu and his crew were heavy smokers and had been reprimanded for smoking in or near the home on more than one occasion. Mr. Combs described Mr. Luu's crew as "sloppy" and related that they did smoke cigarettes in the backyard. Mr. Combs also reported that Mr. Luu and his crew were caught smoking in the house on the day of the fire. Mr. Jenkins described frequently observing Mr. Luu and his crew outside smoking. Ms. Jenkins stated that she had observed cigarette butts within ten feet of the rear deck.

In addition, Mr. Luu was identified as the last person at the construction site on the day of the fire. He was also shown to have been working with flammable materials. Mr. Luu admitted that he re-used stain-soaked rags on the same job. Mr. Fultz testified to his observation of buckets containing used staining rags and cigarette butts in a dumpster on his first visit to the property.

In Tennessee, negligence may be proven by circumstantial evidence. *Nashville R. & L. Co. v. Harrison*, 5 Tenn. App. 22, 25 (Tenn. Ct. App. 1927) (citing *Walton and Co. v. Burchel*, 121 Tenn. 715 (Tenn. 1907)). Based on the evidence in the record, we conclude that Owners presented sufficient facts, which, viewed in the light most

favorable to Owners, create genuine issues of material fact precluding summary judgment. Owners demonstrated that Flooring Subcontractors owed a duty to exercise reasonable care when working on the property and that this duty had allegedly been breached when Flooring Subcontractors improperly disposed of flammable rags and cigarette butts. Owners also alleged sufficient material facts to create a genuine issue regarding causation based on the same evidence. Further, Owners have unquestionably suffered significant damages. For these reasons, we reverse the trial court's grant of summary judgment in favor of Flooring Subcontractors on the issue of negligence.

## VI. Breach of Contract

Owners contend that the trial court erred in granting summary judgment in favor of Builder on their breach of contract claim. The trial court based the grant of summary judgment on its finding that Owners had materially breached the contract first by failing to procure insurance, as was expressly required by the construction contract. This analysis is only relevant because Owners' prior material breach of the contract could preclude them from claiming damages thereunder due to a subsequent breach by Builder. As this Court has clarified:

> A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 715 S.W.2d 41, 47 (Tenn. 1986); *Cummins v. McCoy,* 22 Tenn. App. 681, 691, 125 S.W.2d 509, 515 (1938). Thus, in cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material breach. *See* Restatement (Second) of Contracts § 237 comment b (1979).

*McClain v. Kimbrough Const. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990).

Our Supreme Court has explained, "In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). In this matter, there is no dispute that Owners and Builder entered into a valid and enforceable written contract. Further, Owners have presented proof from which a fact-finder could reasonably conclude that Flooring Subcontractors acted negligently and caused damages to Owners, as discussed above. Because the negligence of Flooring Subcontractors in the performance of their work can create liability for Builder pursuant to Builder's implied obligation to perform the work "skillfully, carefully, diligently, and in a workmanlike manner," the fact-finder could find that Builder breached the contract at issue for construction of Owners' home. *See Fed.*

*Ins. Co.*, 354 S.W.3d at 294 ("Because the [general contractor] had the implied duty under contract to install the roof carefully, skillfully, diligently, and in a workmanlike manner, and, further, because the delegation of the responsibility to perform the services did not operate to release him from liability, the [general contractor], based on his contract with the [homeowners], may be held liable for the damages caused by the acts of [subcontractor].").

Our analysis of this issue is therefore narrowed to whether Owners committed the first uncured material breach of the contract so as to preclude their recovery for any later breach committed by Builder. *See McClain*, 806 S.W.2d at 199. Having concluded that Owners did commit the first material breach, the trial court granted summary judgment in favor of Builder. Following our thorough review of the evidence, however, we determine that on this question there exist genuine issues of material fact precluding summary judgment.

Again, our review must focus upon the terms of the parties' written agreement. The parties' contract states in pertinent part:

> **<u>OWNERS AGREE AS FOLLOWS</u>**: To pay Contractor according to schedule, to hold harmless, Contractor for any accidents and/or death to owners or to family or friends they bring to the site, to communicate primarily with the Contractor, and to use "Change Orders" for any deviations from the Contract. <u>Owners shall provide insurance coverage to include all risk: including coverage for theft, vandalism, malicious mischief, earthquake, flood, windstorm and covering compensation for Contractor expenses</u> (this is normally required by lenders).

(Emphasis added.) It is undisputed that Owners failed to procure the required insurance, stating that this obligation simply "went right by" them. Mr. Combs testified via affidavit that he was unaware that Owners had failed to fulfill this contractual requirement. Further, Mr. Combs stated that if he had been aware of this failure, he would not have begun construction on the home until the matter of insurance had been remedied.

Regarding materiality of a breach of contract, this Court has explained:

> To determine whether a breach is material, Tennessee looks to Section 241 of the Restatement (Second) of Contracts. *Adams TV of Memphis, Inc. v. ComCorp of Tenn.,* 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997) (citing *McClain v. Kimbrough Constr. Co., Inc.,* 806 S.W.2d 194, 199 (Tenn. App. 1990); Restatement (Second) of Contracts § 241 (1981)). The following are the factors in determining whether a breach is material:

14

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241.

*Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225-26 (Tenn. Ct. App. 2009). The trial court made no specific findings with regard to the above factors.

Owners argue that Builder was not deprived of a reasonably expected benefit because the procurement of the required insurance would not have insulated Builder from ultimate liability. In support of this assertion, Owners presented the declaration of William Thomas, Chairman of the Board of TIS Insurance Services, Inc., who explained in relevant part:

Based upon my experience in the construction insurance business, it is clear that the standard builders' risk insurance policy would permit the carrier underwriting such a policy to seek subrogation against a general contractor, subcontractor, and/or sub-subcontractor [who is] found to be at fault, to the extent that such carrier was required to make any payments pursuant to such builders' risk policy.

Put another way, with respect to the typical builders' risk insurance policy, if a loss occurs for which the policy provides coverage, and the carrier underwriting the policy is required to pay with respect to such loss, that carrier would have a right of subrogation against the general contractor

who was found to be at fault with respect to the loss to recover all amounts paid on account of the loss.

(Paragraph numbering omitted.)  Ergo, Owners contend that even with the procurement of the required insurance, Builder would have received no benefit and "would be in exactly the same lawsuit as the instant action, but just facing a different plaintiff, *i.e.*, the insurance company rather than the Jenkins[es]."

We determine that this evidence, although not conclusive on the issue, creates a genuine issue of material fact with regard to whether Owners first materially breached the contract.  This issue must be remanded to the trial court for full consideration and appropriate findings of fact with regard to the factors enumerated above concerning material breach.  We therefore reverse the trial court's grant of summary judgment in favor of Builder on the breach of contract issue.

## VII.  Conclusion

For the reasons elucidated above, we affirm the trial court's grant of summary judgment in favor of Builder regarding its own negligence and *res ipsa loquitur*.  Having determined that genuine issues of material fact exist regarding Flooring Subcontractors' possible negligence, we reverse the trial court's grant of summary judgment in favor of Flooring Subcontractors.  Because the fact-finder could determine that Flooring Subcontractors were negligent, thereby creating liability for Builder based on Builder's implied duty contained in the construction contract to perform the work "skillfully, carefully, diligently, and in a workmanlike manner," we reverse the trial court's grant of summary judgment in favor of Builder on Owners' breach of contract claim. *See Fed. Ins. Co.*, 354 S.W.3d at 294.  We remand this case to the trial court for further proceedings consistent with this opinion.  Costs on appeal are taxed one-third to appellants, Ewin B. Jenkins and Janet Jenkins; one-third to appellee, Big City Remodeling; and one-third to appellees, Henson & Associates Flooring, Inc., and Julian Luu d/b/a Quality Hardwood Floors.

_____
THOMAS R. FRIERSON, II, JUDGE

16